## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JANE DOE,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**INTERMOUNTAIN HEALTH CARE, INC. and SELECTHEALTH, INC.,**<br><br>        **Defendants.** | **AMENDED[1] MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:18-CV- 807-RJS-JCB**<br><br>**Chief District Judge Robert J. Shelby**<br>**Magistrate Judge Jared C. Bennett** |

Before the court are Plaintiff Jane Doe's ("Plaintiff") Short Form Discovery Motion Re: Defendants' Assertions of Privilege and Defendants Intermountain Health Care, Inc. ("IHC") and SelectHealth, Inc.'s ("SelectHealth") (collectively "Defendants") Motion Memorandum Re: Privileged Documents (referred to jointly as "Motion").[2] The court held oral argument on the matter on September 30, 2020.[3] Following the hearing, the court requested additional briefing on the privilege issues discussed on the record and ordered Defendants to submit the documents for an *in camera* review.[4] On October 21, 2020, pursuant to the court's order, Defendants submitted their challenged documents *in camera* with an updated privileged log and brief in support of

---

[1] This amended order is issued contemporaneously with the order granting in part and denying in part the motion for clarification, ECF No. 141.

[2] ECF Nos. 104, 126.

[3] ECF No. 122.

[4] ECF No. 121.

their assertions of privilege.[5] Plaintiff filed a response memorandum,[6] and Defendants filed a reply.[7]

After reviewing the parties' submissions and the documents submitted *in camera*, the court issued an Oral Argument Order ("Oral Argument Order") prior to the hearing, wherein the court provided tentative rulings and ordered that counsel be prepared to address particular issues.[8] On December 21, 2020, the court held oral argument over video teleconference. At the conclusion of the hearing, the court took the matter under advisement.

After carefully reviewing the documents *in camera*, and considering the parties' briefs, relevant law, and arguments of counsel, the court **GRANTS IN PART** and **DENIES IN PART** the Motion.[9] The court addresses the discoverability of each document below.

BACKGROUND

Plaintiff brings this action against IHC and SelectHealth alleging improper denial of insurance benefits. Plaintiff, an employee of IHC, had an insurance policy through a self-funded employee welfare benefits plan (the "Plan"). SelectHealth was the third-party claims administrator for the Plan. In 2017 and 2018, Plaintiff received mental health treatment at a residential treatment facility. Plaintiff filed insurance claims with SelectHealth for coverage of her treatment, and SelectHealth denied full payment. Plaintiff pursued internal and external appeals, which SelectHealth denied. Plaintiff then commenced this action in October 2018 under the Employee Retirement Income Security Act and the Mental Health Parity and Addiction

---

[5] ECF No. 126.

[6] ECF No. 127.

[7] ECF No. 129.

[8] ECF No. 134.

[9] ECF Nos. 104, 126.

Equity Act. Broadly stated, Plaintiff alleges that Defendants improperly denied her claims, misrepresented the bases for denying coverage, and withheld Plan-related documents.

On August 28, 2020, Plaintiff moved to compel Defendants to produce documents withheld as privileged. Plaintiff seeks the production of communications that were generated in response to Plaintiff's December 5, 2018 request. In compliance with the court's September 30, 2020 Order, Defendants submitted an amended privileged log and the challenged documents for an *in camera* review to resolve the dispute. The documents submitted for *in camera* review include approximately 1,317 pages comprised primarily of email discussion threads and documents attached to those emails.

The parties have each advanced several arguments purportedly demonstrating either the protected nature of the disputed documents or the absence of any such protection. Although Plaintiff does not have the benefit of having examined the documents, Plaintiff, based on the amended privilege log, has identified three reasons why the disputed documents should be discoverable in the context of this litigation. Plaintiff contends that certain documents are not protected by attorney-client privilege because they do not constitute communications in which legal advice was sought or conveyed and contain purely factual information. Plaintiff also argues that the documents were not prepared in anticipation of litigation but reflect work prepared in the ordinary course of Defendants' business and, therefore, are neither confidential nor protected by the work product doctrine. Lastly, Plaintiff argues the documents are not privileged because they fall within the fiduciary exception to privilege.

Conversely, Defendants assert the fiduciary exception does not apply and primarily advance two arguments for why the disputed documents are protected by attorney-client privilege and, in some instances, by the work product doctrine. Defendants first argue that the emails reflect Defendants' requests and receipt of legal advice from Defendants' in-house counsel and outside counsel. Second, Defendants contend that certain emails and documents

attached to emails—although independently containing nonprivileged information—are nevertheless privileged because they relate to the facilitation of legal advice and revealing the contents of those documents would reveal the substance of privileged communications.

LEGAL STANDARDS

The court begins by setting forth the standards that it has used in evaluating Defendants' privilege claims. The court discusses attorney-client privilege followed by the work product doctrine.

## I.    ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance.[10] A party invoking the attorney-client privilege must show "(1) a communication (2) between privileged persons, (3) made in confidence,[] (4) for the purpose of seeking, obtaining, or providing legal assistance."[11] The burden of establishing each element rests with the party asserting privilege.[12] The court construes the privilege narrowly because it renders relevant information undiscoverable, and, therefore, the court applies it "only where necessary to achieve its purpose."[13] The legal standards for each element of attorney client privilege are briefly discussed below.

---

[10] _United States v. Constr. Prods. Research, Inc._, 73 F.3d 464, 473 (2d Cir. 1996).

[11] _Hedquist v. Patterson_, 215 F.Supp.3d 1237, 1244 n.2 (D. Wyo. April 18, 2016) (citations omitted); _see also_ United States v. Lopez, 777 F.2d 543, 552 (10th Cir. 1985); Restatement (Third) of the Law Governing Lawyers § 68 (2000); Edna Selan Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 35 (6th ed. 2017).

[12] _In re Foster_, 188 F.3d 1259, 1264 (10th Cir. 1999).

[13] _Fisher v. United States_, 425 U.S. 391, 403 (1976).

A.  <u>Communications</u>

The communications at issue here are emails and attachments to emails. The emails are contained in a string that gets longer after more responses to the original email are transmitted. Where, as here, Defendants assert privilege to a string of emails, Defendants bear the burden of establishing the aforementioned elements for each email in the string.[14]

Additionally, because there are attachments to the email strings, Defendants must also establish the elements of attorney-client privilege for each attachment. Even if attorney-client privilege protects an email itself, attachments to the email are not privileged unless the attached document is privileged when the client created it.[15] Thus, a document that was not privileged in the client's hands cannot magically become privileged merely by sending it to an attorney in search of legal advice.[16] "Were the rule otherwise, a party could shield quantities of highly relevant and fully discoverable documentary evidence through the simple expedient of conveying copies to [its] attorney."[17]

Despite this authority, Defendants contended at oral argument that the court's reading of *Fisher* was too broad and that when pre-existing, non-privileged emails or attachments are

---

[14] *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 503 (4th Cir. 2011)*; see In re Appl. of Chevron Corp.,* No. MC10371CKKDAR, 2013 WL 11241413, at *5 (D.D.C. Apr. 22, 2013) ("[F]ederal courts generally expect that attachments, like earlier strings in email correspondence, need to be treated separately and logged as such." (internal quotation marks and citation omitted)).

[15] *Fisher*, 425 U.S. at 403–04*; see, e.g.,* HSBC I, 2014 WL 1327952, at *3 (S.D.N.Y. April 3, 2014) ("Even if the emails themselves were privileged, to the extent that the request for advice attaches business records created in the ordinary course of business, those business records do not become privileged because copies are also sent to counsel in connection with a request for advice." (internal quotation marks and citation omitted)).

[16] *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996).

[17] *Renner v. Chase Manhattan Bank*, No. 98-CV-926, 2001 WL 1356192, *5 (S.D.N.Y. Nov. 2, 2001).

connected to privileged emails containing attorney-client communications, those forwarded emails and corresponding attachments become privileged too. Defendants cited three district court cases in the Sixth and Seventh Circuits for the proposition that forwarded non-privileged emails and attachments to emails are also privileged if they are attached to emails seeking legal advice that may relate to those attachments.[18] This court will not follow these decisions because they ignore the Supreme Court's holding in *Fisher*.

In *Fisher*, the United States subpoenaed tax information from two taxpayers as part of "an investigation of possible civil or criminal liability under the federal income tax laws."[19] After receiving the subpoenas, "the taxpayers transferred the documents to their lawyers . . . each of whom was retained to assist the taxpayer in connection with the investigation."[20] The documents consisted of, among other things, tax returns and accountant analyses of the taxpayers' finances.[21] Although the Supreme Court does not mention whether transfer of these documents to the attorneys was accompanied by a cover letter requesting legal advice, there is no question that the taxpayers hired these lawyers to provide them with legal services regarding the United States' tax investigation.[22] When the taxpayers refused to comply with the subpoenas

---

[18] *Hilton-Rorar v. State & Fed. Commc'ns*, No. 09-CV-1004, 2010 WL 1486916, *7 (N.D. Ohio April 13, 2010) ("Confidential e-mails from a client to his attorney attaching a pre-existing unprivileged e-mail may, nevertheless, be protected."); *Barton v. Zimmer*, No. 06-CV-208, 2008 WL 80657, *5 (N.D. Ind. Jan. 7, 2008) ("[E]ven though one e-mail is not privileged, a second e-mail forwarding the prior e-mail to counsel might be privileged in its entirety."); *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007) (stating that nonprivileged email can become privileged once forwarded to an attorney).

[19] 425 U.S. at 394.

[20] *Id.*

[21] *Id.*

[22] *Id.* (recognizing that each lawyer "was retained to assist the taxpayer in connection with the investigation), *id.* at 402 (stating that the taxpayers "sought legal advice and turned the papers over to their attorneys" (emphasis added)).

because they no longer possessed the information, the United States subpoenaed the taxpayers'

lawyers for the documents.[23] The lawyers refused to produce the subpoenaed documents on the

grounds of attorney-client privilege.[24]

The Supreme Court required the attorneys to produce the subpoenaed information

because "the documents were not privileged either in the hands of the lawyers or of their

clients."[25] The court reasoned that even though the documents were turned over to the lawyers

for purposes of obtaining legal advice,

> [t]his Court and the lower courts have thus uniformly held that pre-existing
> documents which could have been obtained by court process from the client when
> he was in possession may also be obtained from the attorney by similar process
> following transfer by the client <u>in order to obtain more informed legal advice</u>.[26]

Therefore, even though these pre-existing documents were provided to the attorneys for the

precise purpose of obtaining legal advice, the mere transfer of these documents to the attorney

did not preclude them from being produced because they were not privileged while in the hands

of the client.

The three cases that Defendants cite ignore *Fisher*. Under the three cited cases, all a

client has to do to assert privilege over pre-existing, non-privileged emails and attachments

forwarded to an attorney is to show that they were transmitted with an email or letter that is

privileged because it seeks legal advice. Getting around *Fisher* cannot be that easy. It seems odd

indeed to assert that if the taxpayers in *Fisher* had merely included the subpoenaed documents in

a package with a cover letter that sought legal advice, all the attached documents to that letter

---

[23] *Id.*

[24] *Id.* at 395.

[25] *Id*. at 396.

[26] *Id.* at 403.

would also become privileged. This court views that reading of *Fisher* with askance given that the *Fisher* court recognized that transferring the documents to legal counsel was for the express purpose of obtaining legal advice. Even so, the Court still required the documents to be produced because they were not privileged when in the hands of the client. The absence of a cover letter/email seeking legal advice has no bearing on whether forwarded pre-existing, non-privileged emails or attachments are privileged when transmitted to an attorney for the purpose of obtaining legal advice. Not surprisingly, numerous courts have long agreed that *Fisher*'s reasoning is not so easily overcome.[27] Therefore, pre-existing, non-privileged emails and attachments sent with a privileged communication seeking legal advice will not themselves be privileged merely because they were sent as part of a communication that was.

### B.  Between Privileged Persons

To qualify for attorney-client privilege, Defendants must show that each email was sent between privileged persons. In contesting Defendants' ability to meet this element, Plaintiff

---

[27] *United States v. Osborn*, 561 F.2d 1334, 1338 (9th Cir. 1977) (pre-existing, non-privileged documents given to attorney for the purpose of obtaining legal advice were not protected from subpoena under theory of attorney-client privilege); *Clavo v. Zarrabian*, No. 03-CV-864, 2003 U.S. Dist. LEXIS 27202, *4 (C.D. Cal. Sept. 24, 2003) ("The mere transmittal of documents to a lawyer is insufficient to bring documents under the umbrella of the attorney-client privilege."); *Guidry v. Jen Marine LLC*, No. 03-CV-18, 2003 U.S. Dist. LEXIS 15273, *6 (E.D. La. Aug. 22, 2003) (holding that correspondence that merely transmits documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to a client, are neither privileged nor attorney work product); *Renner*, 2001 WL 1356192, at *5; *Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 393 (S.D. Ind. 1997) ("The cover letter is protected by the attorney-client privilege. The [attached] agreement is not."); *Pacamor Bearings*, 918 F.Supp. at 511 ("Attachments which do not, by their content, fall within the realm of privilege cannot become privileged merely by attaching them to a communication with the attorney."); *P&B Marina, L.P. v. Logrande*, 136 F.R.D. 50, 56 (E.D.N.Y. 1991) ("Merely attaching . . . documents to attorney-client communications does not constitute a basis for assigning privilege. To permit this result would abrogate the well-established rule that only the communication, not the underlying facts, are privileged."); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with an attorney.").

argues that emails exchanged between employees of SelectHealth and IHC seeking legal advice from SelectHealth's in-house counsel is not between privileged persons because SelectHealth and IHC expressly deny that they are agents for one another. This argument fails to show that the communications between Defendants were not between privileged persons.

Several courts, including this one,[28] have long recognized that separate corporations "can be treated as one entity for attorney-client privilege purposes if they are closely affiliated and share the same legal interest."[29] "Corporations consequently can demonstrate sufficient interrelatedness to be treated as one entity for attorney-client privilege purposes if they *either* are closely affiliated or share an identity of legal interest."[30]

Defendants meet these requirements here. SelectHealth and IHC share a common history (SelectHealth was created from IHC), they share counsel, they have a common interest in this litigation, and they are both defendants against Plaintiff's claims. Therefore, the court finds that the entities are sufficiently related to be able share confidential communications with each other for purposes of obtaining legal advice without risking loss of privilege so long as the elements of attorney-client privilege are otherwise met.[31]

---

[28] *Brigham Young Univ. v. Pfizer, Inc.*, No. 06-CV-890, 2011 WL 2795892, at *5 (D. Utah July 14, 2011).

[29] Epstein, ATTORNEY-CLIENT PRIVILEGE 201 (listing several cases that found waiver of privilege between two corporate entities that were closely related).

[30] *Music Sales Grp. v. Morris*, No. 98-CV-9002, 1999 U.S. Dist. LEXIS 16433, at *22 (S.D.N.Y. Oct. 22, 1999).

[31] Plaintiff argues that because IHC and SelectHealth are not agents for each other, their communications between each other are not confidential. Although true that confidential communications between agents preserves attorney-client privilege, Restatement (Third) of the Law Governing Lawyers §70, agency is not the exclusive way to maintain confidential communications between different entities. Indeed, closely related entities qualify for the same protections as communications between agents. This is true for work product purposes too. *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 583 (E.D. Pa. 1989) (holding that no waiver of work product occurs with an entity having common interests).

C. <u>Made in Confidence</u>

When determining whether a communication was made in confidence between privileged persons, courts consider whether the material in the communication was intended to be private. Plaintiff contends that the communications between Defendants and their counsel could not be made in confidence to the exclusion of the plan beneficiary (i.e., Plaintiff) because of the fiduciary exception to attorney-client privilege. The fiduciary exception recognizes that "[t]here is no attorney-client privilege between a pension trustee and an attorney who advises the trustee regarding the administration of plan . . . because '[a]s a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client.'" [32] Conversely, the fiduciary exception does not apply when the trustee is seeking legal advice regarding its own interests, and, therefore, the communications between trustee and its attorney are protected under the attorney-client privilege. [33] Thus, for the exception to apply, the communications between the trustee and its attorney must pertain to the administration of the plan and not the trustee's own legal needs.

Although Plaintiff requested information from the Defendants under 29 U.S.C. § 1132(c), that fact, by itself, does not mean that Defendants were acting in a fiduciary capacity in responding to that request. At the outset, the court notes that there is no case holding that responses to § 1132(c) requests are per se answered in a fiduciary capacity that would entitle to requester to see all of the attorney-client privileged communications conveyed between attorney and client in responding to the request. Such a rule would be imprudent, and this case is a good example as to why. Plaintiff was already in active litigation with Defendants at the time of her

---

[32] *United States v. Evans*, 796 F.2d 264, 265-66 (9th Cir. 1986) (citations omitted).

[33] *In re Long Island Lighting, Co.*, 129 F.3d 268, 272-73 (2d Cir. 1997).

§ 1132(c) request. Naturally, when Defendants received the § 1132(c) information request while involved in litigation with Plaintiff—and that request touched on matters involved in the pending litigation—Defendants viewed that request as if it were the functional equivalent of a discovery request in litigation. Consequently, Defendants are defending their own interests instead of acting on behalf of the client beneficiary. If, however, this court were to hold that responses to § 1132 requests are produced in a fiduciary capacity, the law would sanction a tricky legerdemain around the attorney-client privilege by allowing the requesting party to see all the attorney-client communications between the Defendants and their counsel pertaining to matters in active litigation. That is not appropriate. Therefore, the fiduciary exception does not apply here, which means that the communications at issue between Defendants and their lawyers were made in confidence so that Plaintiff cannot see them if those communications meet the other elements of attorney-client privilege.

### D.   For the Purpose of Seeking, Obtaining, or Providing Legal Assistance

Even if a communication meets all the previously discussed elements, if it was not sent or received for the purpose of seeking, obtaining, or providing legal advice, then attorney-client privilege cannot apply. "The ultimate touchstone for application of the privilege . . . is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion."[34] Just as the lack of an attorney on an email does not necessarily render that email discoverable, an attorney's participation on the email chain does not necessarily establish privilege either.[35] Defendants must show, irrespective of whether an attorney sent or received the

---

[34] *United States v. Davita, Inc.*, 301 F.R.D. 676, 682 (M.D. Ga. 2014).

[35] *Kleeberg v. Eber*, 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019) (stating that a communication is not privileged by virtue of an attorney's presence).

communication, that the primary purpose of the communication was to relay, request, or transmit legal advice.[36]

At oral argument, Defendants admitted that some of the emails at issue did not convey legal advice. For example, some of the emails at issue here contain exchanges of gratitude or well wishes between sender and recipient. Other emails discussed employee schedules or other topics that were related to but did not seek or obtain legal advice. Defendants argued that under *Adams v. Gateway, Inc.*,[37] communications "relating to" the purpose of seeking legal advice from a legal adviser are subject to attorney-client privilege. Defendants then argued that because these thank you, status, and scheduling emails were all "related to" emails that sought or conveyed legal advice, they too were protected.

This argument sounds reasonable if a party chooses to stop reading the *Adams* decision after the court uses "related to." Indeed, the way the court applied the concept of "related to" clearly shows that the use of this phrase did not expand attorney-client privilege to communications that did not themselves seek or contain legal advice. This fact is evinced in several places within the opinion. For instance, the *Adams* court discusses the argument that emails between non-attorney employees could be protected by attorney-client privilege.[38] The court observes that communications between non-attorney employees can only be privileged if the emails were sent for the purpose of obtaining legal advice and "the purpose of obtaining legal services is present" in the email.[39] The court then states that the "presence of that purpose is determined from an inspection of the document," and "[w]here an inspection of the document

---

[36] *Kirsch v. Brightstar Corp.*, 68 F.Supp.3d 846, 851-53 (N.D. Ill. Sept. 11, 2014).

[37] No. 02-CV-106, 2003 WL 23787856, *5 (D. Utah Dec. 30, 2003).

[38] *Id.* at *11.

[39] *Id.*

itself fails to support a finding that the primary purpose of the document was to seek legal advice or services the privilege will be denied."[40] Lest there be any doubt remaining, the *Adams* court then states that for privilege to attach to non-attorney employee communications, "it must be apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice or the document itself must reflect the requests and directions of counsel."[41]

If attorney-client privilege attaches to all emails that merely "relate to" communications seeking or receiving legal advice, this discussion is unnecessary. There is no reason to require the document itself to bear indicia of seeking or receiving legal advice if all that the privilege proponent must show is that the communication merely "relates to" the previous seeking or provision of legal advice. Additionally, the *Adams* court required the privilege proponent to disclose emails and attachments to those emails that were clearly "related to" seeking and obtaining legal advice, but the court held that they were not privileged because those emails and attachments did not specifically seek or provide legal advice.[42] In fact, the court recognized that an email contained a "twenty-word sentence" of attorney-client privileged information, but, because the one sentence could be redacted, the court determined that the rest of the email could be produced.[43] This is significant because even though the rest of the email clearly "related to" the twenty words of legal advice, the *Adams* court ordered its production because the remainder of the email did not seek or provide legal advice. Thus, Defendants' argument that any communication "related to" the provision or receipt of legal advice is privilege is unsupported.

---

[40] *Id.* (citations and quotations omitted).

[41] *Id.*

[42] *Id.* at **17–22.

[43] *Id.* at *20.

Instead, Defendants must show that each email and attachment for which privilege is asserted must seek or convey legal advice and not merely contain communications that are tangentially "related to" those privilege communications.

## II.   WORK PRODUCT DOCTRINE

To invoke the protection of the work product doctrine, the party must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation.[44] The party asserting the privilege has the burden of proving that the contested documents are protected by the work product doctrine.[45]

The crucial factor courts should consider when determining whether the work product doctrine applies to particular documents or materials is whether they were prepared with "with an eye toward" or "in anticipation of" or "because of the prospect of litigation."[46] "[T]he doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation."[47]  Documents that were created in the normal course of business not motivated by litigation cannot be protected under the work product doctrine.[48] Thus, if attachments to an email were created for a business

---

[44] Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . . .").

[45] *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

[46] Hickman v. Taylor, 329 U.S. 495, 510, 510–11 (1947).

[47] *In re Symbol Techs., Inc.*, No. 05-cv-3923 (DRH) (AKT), 2017 WL 1233842 (E.D.N.Y. March 31, 2017).

[48] *Banks v. Office of the Senate Sergeant-at-Arms*, 228 F.R.D. 24, 26-27 (D.D.C. 2005) ("Hence, if the same or essentially similar documents would have been created whether or not in litigation was foreseen, it [cannot] fairly be said that they were created because of actual or impending litigation.").

purpose and not because of litigation, such documents are not entitled to protection as work product.

DISCUSSION

The court next addresses the documents listed in the Defendants' privilege log and provided to the court for *in camera* review pursuant to the categories described below. The court (I) first addresses its general framework for determining whether a document in this case is properly classified as privileged and (II) then addresses individual documents.

## I.    GENERAL FRAMEWORK

As a general framework, the court divides the documents for which Defendants assert privilege into three categories. First, the court presents the emails for which it finds attorney-client privilege. Second, the court discusses the emails that are not privileged. Finally, the court discusses the attachments that are and are not privileged.

### A.  Privileged Emails

The following emails and attachments constitute confidential communications between client and counsel for the purposes of obtaining or rendering legal advice. Because these emails and the documents attached to the emails are protected by the attorney-client privilege, the court finds it immaterial whether these emails are also afforded protection under the work product doctrine. These documents are as follows: 1-2, 3 (in part), 4-5, 6-9 (in part), 10-23, 24 (in part), 25, 26-29 (in part), 30, 31-32 (in part), 33, 34-36 (in part), 37-39, 40-42 (in part), 43-46, 47-49 (in part), 50.1, 51 (in part), 51.1, 52-53, 54 (in part), 55.1, 56.1, 57.1, 57.2, 58, 58.1, 60-61 (in part), and 62.1. The rulings on these documents are set forth in detail in the table below.

B.  Nonprivileged Emails

The documents in this category consist of email strings discussing plan administration documents generated in response to a request for plan documents among Defendants' employees and in-house and outside counsel. A significant portion of the emails submitted for *in camera* review fall outside of the scope of attorney-client privilege because they clearly do not seek or convey legal advice. For example, several of the contested emails respond to a previous email; the totality of such responses consist of "Sounds good,"[49] or "Thank you."[50] These responses neither seek nor convey legal advice and revelation of these words would not reveal any confidential client communications. Similarly, several disputed emails concern scheduling and status updates without relation to legal analysis. Therefore, they are not privileged.

The remaining emails primarily include emails that reference the policy documents that the employee has been asked to internally locate to provide to counsel. Defendants argue that these emails are protected because identification of the plan documents would tend to reveal the nature of a privileged communication addressed to counsel. Defendants' argument on this point however is unconvincing because it fails to square with the well-established rule that communications that merely convey factual information to an attorney without expressly seeking or receiving legal advice are not privileged.[51] Accordingly, courts have long held that communications that discuss and exchange routine administrative paperwork are not privileged

---

[49] Privilege Log 3.

[50] Privilege Log 17.

[51] *Upjohn,* 449 U.S. at 389 (setting set forth the basic relationship between privileged attorney-client communications and factual information accompanying those communications: "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

where no legal advice is conveyed.[52] Here, the substance of the challenged emails relates only to the existence of the commercial documents to which the subject matter of the communications are purely factual and revelation of the communications would not reveal whatever legal analysis was provided in relation to the document.

Having found the emails are not subject to attorney-client privilege, the court next examines whether these emails are nonetheless afforded work-product protection. Having examined the emails the court concludes that none of these emails involve legal strategy, reveal attorney impressions, or were made in anticipation of litigation. Instead, these emails constitute nothing more than internal dialogue between IHC and SelectHealth employees to facilitate a document request and are without indication that such communications would not have occurred but for the pendency or imminence of litigation.

Defendants have not adequately demonstrated that, under the circumstances, reviewing and redacting the strings at issue would be unduly burdensome. Therefore, Defendants may not withhold the entirety of a conversation merely because one portion of such communication is subject to privilege.[53] Instead, Defendants must selectively redact the document in question and produce any non-privileged portions as described in the table below.

C.  Nonprivileged Attachments to Emails

All the documents in this category, aside from those already found privileged in *supra* I.A., fall outside the scope of attorney-client privilege and work product because they contain only factual information that are not independently privileged, do not reveal privileged

---

[52] *Kleeberg*, 2019 WL 2085412, at *17 (collecting cases).

[53] *AU New Haven, LLC v. YKK Corp.*, No. 15-CV-03411 (GHW)(SN), 2016 WL 6820383, at *8 (S.D.N.Y. Nov. 18, 2016); *see also Adams*, 2003 WL 23787856, *20 (holding that twenty-word sentence providing legal advice could be redacted from email while remainder of email should be produced).

communications, and were not created in anticipation of litigation. This category of documents is comprised of policy documents, plan documents, administrative services agreements, and other commercial documents generated and utilized by Defendants in the course of business. And, as discussed above, pre-existing, non-privileged documents do not magically become privileged merely by sending them to counsel even if part of a request to obtain legal advice.[54]

Defendants' argument to withhold the pre-existing, non-privileged attachments does not fare any better under the work product doctrine. Indeed, as discussed above, "if the same or essentially similar documents would have been created whether or not in litigation was foreseen, it [cannot] fairly be said that they were created because of actual or impending litigation."[55] The attachments in this category had nothing to do with litigation and were prepared so that Defendants could conduct their business—not to litigate a particular dispute.

Almost all the documents attached to emails are nonprivileged and must be produced because they are purely factual documents that are neither independently privileged nor created in the anticipation of litigation, and their revelation will not reveal any confidential client communications. Rather, the attachments that Defendants have withheld are business documents that are widely available both internally and externally and were created for purposes of business. For instance, attachments withheld at privileged include documents such as, "Administrative Services Agreement Between SelectHealth and IHC,"[56] "Administrative Policy Medical Necessity,"[57] Medical Policy Psychiatric Residential Treatment Centers,"[58] "2018 Adult

---

[54] *Fisher*, 425 U.S. at 404.

[55] *Banks*, 228 F.R.D. at 26-27.

[56] Privilege Logs 11.1 and 15.1.

[57] Privilege Log 16.3.

[58] Privilege Logs 46.2, 46.3.

Geriatric Psychiatry Criteria,"[59] and "IHC Administrative Services Agreement."[60] Accordingly, the email attachments must be disclosed—even if attached to a privileged email—because the attachments neither contain nor refer to legal advice. The rulings for all documents are set forth below.

## II.   INDIVIDUAL DOCUMENT REVIEW

Finally, the court renders individual rulings for each document withheld as privileged. With the above legal principles in mind, the court reviewed each email and attachment separately to determine whether attorney-client privilege or the work product doctrine applies. The court's rulings with respect to each document in the privilege log and submitted *in camera* is provided in the table below. Where the court rules that a document, or portion thereof, is not privileged and must be turned over, Defendants must do so within ten (10) days of this Order.[61]

---

[59] Privilege Logs 46.7.

[60] Privilege Logs 46.10.

[61] Rule 37 provides that when the court grants in part and denies in part a motion compelling discovery, it may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Based upon the arguments presented, the court concludes that Defendants' position was substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii). A party's litigation position is substantially justified "if it has a reasonable basis in both law and fact." *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). Although the court ruled against some of Defendants' arguments, their arguments generally contained reasonable factual and legal bases in which to resist an award of fees. Therefore, the court declines to impose fees.

| Privilege Log # | Privilege Asserted | Ruling | Description |
|---|---|---|---|
| 1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 1.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.3 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.4 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.5 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.6 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.7 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy; primary purpose of the communication is business related and involves fulfillment of routine functions | Produce |
| 1.8 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy; primary purpose of the communication is business related and involves fulfillment of routine functions | Produce |
| 1.9 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.10 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy; primary purpose of the communication is business related and involves fulfillment of routine functions | Produce |
| 1.11 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 1.12 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 1 communication | Produce |
| 2 | Attorney Client Privilege | ACP | Need not produce |
| 3 | Attorney Client Privilege | Top email NP, not legal advice or legal strategy ACP: Remaining emails | Produce with appropriate redactions |
| 4 | Attorney Client Privilege | ACP | Need not produce |
| 4.1 | Attorney Client Privilege | NP, not legal advice; disclosure of document does not reveal substance of ACP 4 communication | Produce |
| 5 | Attorney Client Privilege | ACP | Need not produce |
| 5.1 | Attorney Client Privilege | NP, not legal advice; disclosure of document does not reveal substance of ACP 5 communication | Produce |

| 6 | Attorney Client Privilege | Top two emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
|---|---|---|---|
| 7 | Attorney Client Privilege | Top three emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 8 | Attorney Client Privilege | Top four emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 9 | Attorney Client Privilege | Top five emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 10 | Attorney Client Privilege | ACP | Need not produce |
| 10.1 | Attorney Client Privilege | NP, not legal advice; disclosure of document does not reveal substance of ACP 10 communication | Produce |
| 11 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 11.1 | Attorney Client Privilege & Work Product | NP, not legal advice; disclosure of document does not reveal substance of ACP 11 communication | Produce |
| 12 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 13 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 13.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 13 communication | Produce |
| 14 | Attorney Client Privilege | ACP | Need not produce |
| 15 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 15.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 15 communication | Produce |
| 16 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 16.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 16 communication | Produce |
| 16.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 16 communication | Produce |
| 16.3 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation; disclosure of document does not reveal substance of ACP 16 communication | Produce |
| 17 | Attorney Client Privilege | ACP | Need not produce |
| 18 | Attorney Client Privilege | ACP | Need not produce |
| 19 | Attorney Client Privilege | ACP | Need not produce |
| 20 | Attorney Client Privilege | ACP | Need not produce |

| 21 | Attorney Client Privilege & Work Product | ACP | Need not produce |
|----|------------------------------------------|-----|------------------|
| 22 | Attorney Client Privilege | ACP | Need not produce |
| 23 | Attorney Client Privilege | ACP | Need not produce |
| 24 | Attorney Client Privilege | Top email NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 25 | Attorney Client Privilege | ACP | Need not produce |
| 26 | Attorney Client Privilege | Top email NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 27 | Attorney Client Privilege | Top two emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 28 | Attorney Client Privilege | Second email NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 29 | Attorney Client Privilege & Work Product | Second email NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 29.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 29 communication | Produce |
| 30 | Attorney Client Privilege | ACP | Need not produce |
| 31 | Attorney Client Privilege & Work Product | Third email NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 32 | Attorney Client Privilege | Top email NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 33 | Attorney Client Privilege | ACP | Need not produce |
| 34 | Attorney Client Privilege | Top email NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 35 | Attorney Client Privilege | First email NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 36 | Attorney Client Privilege | First two emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 37 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 38 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 39 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 40 | Attorney Client Privilege & Work Product | First two emails NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |

| 41 | Attorney Client Privilege & Work Product | First three emails NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
|----|-----|-----|-----|
| 42 | Attorney Client Privilege & Work Product | First four emails NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 43 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 43.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 43 communication | Produce |
| 43.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 43 communication | Produce |
| 43.3 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 43 communication | Produce |
| 44 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 44.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 44 communication | Produce |
| 45 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 46 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 46.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.3 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.4 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.5 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.6 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.7 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.8 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
| 46.9 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |

| 46.10 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 46 communication | Produce |
|---|---|---|---|
| 47 | Attorney Client Privilege & Work Product | First email NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 47.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 47 communication | Produce |
| 48 | Attorney Client Privilege | First two emails NP, not legal advice<br>ACP: Remaining emails | Produce with appropriate redactions |
| 49 | Attorney Client Privilege & Work Product | First email NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 49.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP/WP 49 communication | Produce |
| 50 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 50.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 51 | Attorney Client Privilege & Work Product | Second email NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 51.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 52 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 53 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 53.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 53 communication | Produce |
| 53.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of ACP 53 communication | Produce |
| 54 | Attorney Client Privilege | First email NP, not legal advice or legal strategy<br>ACP: Remaining emails | Produce with appropriate redactions |
| 55 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy | Produce |
| 55.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 56 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy | Produce |
| 56.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |

| 57 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy | Produce |
|---|---|---|---|
| 57.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 57.2 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 58 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 58.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 59 | Attorney Client Privilege & Work Product | NP, not legal advice or legal strategy | Produce |
| 60 | Attorney Client Privilege | Second, third, fourth, and fifth emails NP, not legal advice or legal strategy<br>ACP: First email | Produce with appropriate redactions |
| 61 | Attorney Client Privilege & Work Product | First, third, fourth, fifth, and sixth emails NP, not legal advice or legal strategy<br>ACP: Second email | Produce with appropriate redactions |
| 61.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation, disclosure of document does not reveal substance of second email communication in 61 | Produce |
| 62 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 62.1 | Attorney Client Privilege & Work Product | ACP | Need not produce |
| 63 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.3 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.4 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.5 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.6 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.7 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.8 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |

| 63.9 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
|---|---|---|---|
| 63.10 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.11 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.12 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.13 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.14 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.15 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.16 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.17 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.18 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.19 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.20 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.21 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 63.22 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.1 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.2 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.3 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.4 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.5 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.6 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |

| 64.7 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
|------|------------------------------------------|-------------------------------------------------------------|---------|
| 64.8 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.9 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.10 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.11 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.12 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.13 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.14 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.15 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.16 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.17 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 64.18 | Attorney Client Privilege & Work Product | NP, not legal advice or created in anticipation of litigation | Produce |
| 65 | Attorney Client Privilege | NP, not legal advice or created in anticipation of litigation | Produce |

**IT IS SO ORDERED.**

DATED this 5th day of February 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge