IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JANE DOE, by LINDA SMITH, as her Personal Representative, | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS** |
| Plaintiff, | |
| v. | No. 2:18-cv-00807-RJS-JCB |
| INTERMOUNTAIN HEALTHCARE, INC. and SELECTHEALTH, INC., | Chief District Judge Robert J. Shelby Magistrate Judge Jared C. Bennett |
| Defendants. | |

This case arises out of Defendant Intermountain Healthcare, Inc. ("IHC") and Defendant SelectHealth, Inc.'s alleged underpayments and denials of coverage of mental health treatment to Plaintiff Jane Doe, who is now represented in this litigation by Linda Smith. Now before the court is Defendants' Motion to Dismiss in part Smith's Third Amended Complaint (TAC). For the reasons explained below, the Motion is DENIED.

## BACKGROUND

The following facts are drawn from the Third Amended Complaint.[1] In reviewing the Motion to Dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to Doe.[2]

---

[1] Dkt. 153 (Sealed Third Amended Complaint) (hereinafter TAC).

[2] *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

## I.     Doe's Employment, Insurance Coverage, and Mental Health Diagnoses

Plaintiff Linda Smith brings this case against Defendants on behalf of her late daughter, Jane Doe, who tragically took her life during the pendency of this litigation.[3]  Doe was a "highly educated professional in her 40s" who suffered from chronic, severe mental illnesses including Major Depressive Disorder and Post-Traumatic Stress Disorder (PTSD).[4]  Until April 15, 2017, Doe worked as a physician for Defendant Intermountain Healthcare ("IHC").[5]

In 2016, following worsening symptoms, Doe was treated at the Menninger Clinic Professionals in Crisis Unit from December 30, 2016 through April 8, 2017.  The Menninger Clinic recommended Doe pursue residential treatment at The Austen Riggs Center.[6]  Austen Riggs provides services including intensive psychotherapy, psychopharmacology, and twenty-four-hour nursing.  These were medically appropriate and necessary services given Doe's propensity for self-harm and suicidal behaviors.[7]  Doe was admitted to Austen Riggs on April 10, 2017 and remained until August 9, 2017, when she was involuntarily hospitalized.  On September 13, 2017, Doe was readmitted to Austen Riggs, where she remained until April 17, 2018, when she was again hospitalized.[8]

Doe was insured under the Intermountain Life and Health Benefit Plan ("the Plan"), which was sponsored by IHC.  Doe chose the "Select Med Plus Medical Plan" because it offered out-of-network mental health benefits.[9]  Doe remained covered by the Plan through July 31,

---

[3] TAC ¶ 56.

[4] TAC ¶¶ 1, 52.

[5] TAC ¶ 3.

[6] TAC ¶ 2.

[7] TAC ¶ 47.

[8] TAC ¶ 2.

[9] TAC ¶ 3.

2018, pursuant to COBRA.[10]  SelectHealth, a licensed health maintenance organization wholly owned by IHC, is the claims review fiduciary to which IHC delegates sole discretionary authority to determine the availability of benefits and interpret the Plan.  SelectHealth's claims and appeals determinations are conclusive and binding.[11]

The Plan provides in-network and out-of-network coverage for "medically necessary" medical and mental health services.[12]  The Plan defines "medically necessary" services as those "a prudent healthcare professional would provide to a patient for the purpose of . . . treating an illness . . . in a manner that is: (a) in accordance with generally accepted standards of medical practice . . . ; (b) clinically appropriate; and (c) not primarily for the convenience of the patient, physician, or other provider."[13]  The Plan covers mental health treatment for psychiatric conditions listed in the Diagnostic and Statistical Manual (DSM), which includes Major Depressive Disorder and PTSD.[14]  The Plan also covers hospitalization and residential mental health treatment given by non-participating facilities, both in and outside of Utah.[15]  Benefits for out-of-network services are paid based on an "Allowed Amount," which the Plan defines as "[t]he dollar amount allowed by the Plan for a specific Covered Service."  In letters to Doe, Defendants interpreted this language to mean reimbursements for out-of-network services should "generally" match in-network target rates set by Defendants.[16]  The Plan requires

---

[10] TAC ¶ 46.

[11] TAC ¶ 5.

[12] TAC ¶ 30.

[13] TAC ¶ 31.

[14] TAC ¶ 6.

[15] TAC ¶ 7.

[16] TAC ¶ 8.

preauthorization from SelectHealth for residential mental health treatment.[17]  According to Plan

terms, a participant must go through one mandatory review of a denied claim before pursuing a

civil action.[18]

The Plan is governed by the Employee Retirement Income Security Act (ERISA) and the

Mental Health Parity and Addiction Equity Act (Parity Act).[19]  IHC and SelectHealth are

fiduciaries under ERISA.[20]  Additionally, both IHC and SelectHealth claim to protect

participants' privacy.  The SPD states that "[w]e . . . follow federal and state laws that govern the

use of your health information."[21]  SelectHealth promises the same.[22]

## II.    Doe's Residential Mental Health Treatment and Attempts for Reimbursement

During the December 2016 to April 2018 period, Smith alleges Defendants "fully denied

coverage" and paid no benefits for much of the residential mental health treatment Doe sought,

and did so based on a "discriminatory and clinically unsupportable geographic restriction

imposed exclusively on mental health benefits."[23]  Defendants also allegedly misrepresented the

basis for their denials while refusing to provide supporting documentation.[24]  While Defendants

covered some of Doe's mental health services, Plaintiff alleges they also applied discriminatory

reimbursement policies resulting in the underpayment of some claims.[25]  As a result, Doe sold

---

[17] TAC ¶ 35.

[18] TAC ¶ 37.

[19] TAC ¶ 9.

[20] TAC ¶ 12.

[21] TAC ¶ 38.

[22] TAC ¶ 39.

[23] TAC ¶¶ 13–14.

[24] TAC ¶ 14.

[25] TAC ¶ 15.

her home to fund over $350,000 in residential treatment expenses that were not reimbursed.[26]
The treatment locations, level of coverage, and appeals processes are described below.

### a. Psychiatric Hospitalizations: December 30, 2016–April 8, 2017; August 9, 2017–August 18, 2017; and April 27, 2018

Doe was psychiatrically hospitalized three times during the December 2016 to April 2018
period.  First, she was hospitalized at the Menninger Clinic, from December 30, 2016 through
April 8, 2017.[27]  Second, she was hospitalized at the Berkshire Medical Center from August 9,
2017 through August 18, 2017.[28]  Finally, she was hospitalized again at Berkshire on April 27,
2018.[29]  The hospitalizations at Berkshire were covered by SelectHealth.[30]  However, while
Defendants approved and paid for "a significant duration" of Doe's treatment at the Menninger
Clinic, Doe later learned the amount paid was "unlawfully low."[31]

### b. First Residential Stay at Austen Riggs: April 10, 2017–August 9, 2017

SelectHealth initially approved residential treatment at Austen Riggs from April 10, 2017
through May 17, 2017, and paid benefits Doe later learned were "unlawfully low."[32]  However,
SelectHealth revoked their approval of coverage on May 17, 2017, just one month into treatment.
In a May 23, 2017 letter, SelectHealth informed Doe that while residential treatment was
medically necessary, it could only continue at Center for Change, an in-network, Utah-based
facility for patients with eating disorders.[33]  Doe did not have an eating disorder and chose to

---

[26] TAC ¶ 56.

[27] TAC ¶ 42.

[28] TAC ¶ 50.

[29] TAC ¶ 54.

[30] TAC ¶¶ 55, 109.

[31] TAC ¶ 42.

[32] TAC ¶ 48.

[33] TAC ¶ 49.

stay at Austen Riggs.[34]  Later, Doe's claims for treatment from May 17, 2017 through August 9, 2017 were denied.[35]

Doe and Austen Riggs submitted a timely appeal on or about September 7, 2018.[36] SelectHealth responded on October 20, 2017 but did not identify suitable in-network residential treatment providers in Utah, and also claimed Doe should return to Utah to be near her support system, despite evidence indicating that being in Utah near her "triggering" family members was damaging to Doe's mental health.  Additionally, the SelectHealth physician reviewer used criteria requiring "significant change" in Doe's condition as a predicate for coverage, despite "significant change" not being required by the Plan or generally accepted standards of medical care.[37]  Additionally, SelectHealth failed to comply with ERISA's implementing regulations requiring the Plan to explain or identify the specific rule, guideline, protocol, or internal criterion it relied on in making the adverse determination.  Finally, SelectHealth falsely represented its own claims review procedures, stating that "second level mandatory review is required by the Plan before you may pursue judicial review."[38]

Accordingly, Doe submitted to a second level of review on or about December 5, 2017.[39] The reviewing physician admitted in the meeting the appeal had not been denied "because of level of care, but that we generally won't do business with residential care geographically outside of [the participant's] community and support system."[40]  The reviewing physician also

---

[34] TAC ¶¶ 49–50.

[35] TAC ¶ 55.

[36] TAC ¶ 57.

[37] TAC ¶¶ 58–60.

[38] TAC ¶ 61.

[39] TAC ¶ 62.

[40] TAC ¶ 64.

stated the coverage determination was based on an "expectation that this will get better in a short to medium time frame" despite the fact Doe's Plan did not limit coverage in this fashion.[41]

On March 9, 2018, Doe received a final adverse benefit determination from SelectHealth acknowledging her right to pursue judicial review of the denied coverage for the treatment received at Austen Riggs. The final determination also failed to comply with federal regulations by not explaining or identifying the specific rule, guideline, or protocol it relied on.[42]

### c. Second Residential Stay at Austen Riggs: September 13, 2017–April 27, 2018

Following hospitalization, Doe wished to resume residential treatment at Austen Riggs, but SelectHealth denied preauthorization to resume there and only identified two facilities for residential mental healthcare, both in Utah: Center for Change and the New Roads Behavioral Health, which targeted young adults (up to age twenty-eight) with substance abuse or personality disorders. This time, SelectHealth cited Medical Policy 475, which states "care will be provided in a reasonable proximity to a member's community or residence and support system."[43] Doe decided to resume treatment at Austen Riggs, and SelectHealth denied her claims for treatment.[44]

On or about March 16, 2018, Doe and Austen Riggs submitted a timely appeal of the preauthorization denials, which SelectHealth denied by letter on April 18, 2018.[45] In the April 18th letter, SelectHealth failed to identify any specific rule, guideline, or protocol on which it relied in denying the claims for treatment. SelectHealth again claimed both that Center for Change and New Roads were clinically appropriate residential treatment options, and also

---

[41] TAC ¶ 65.

[42] TAC ¶ 67.

[43] TAC ¶ 52.

[44] TAC ¶ 55.

[45] TAC ¶¶ 68, 70.

claimed that Doe did not meet the criteria for residential treatment at all.[46]  The April 18th letter again incorrectly stated a second level of review was mandatory for administrative exhaustion.[47]

Doe and Austen Riggs again submitted to a second level of review.[48]  On July 11, 2018, the second-level appeal was denied, copying verbatim the March 9, 2018 final adverse benefit determination language.  The panel again failed to cite any specific rule, guideline, or protocol it relied on in issuing its final adverse determination.[49]

### III.   Alleged Violations of ERISA and the Parity Act

Stemming from Defendants' underpayments and denials of treatment as described, Smith alleges the following issues with Defendants' mental health coverage caused violations of ERISA and the Parity Act:

### a.   Systematic Underpayment of Out-of-Network Mental Health Services

In tying their out-of-network reimbursement rates to the in-network fee schedule, Defendants failed to update the out-of-network rates to account for increases in their in-network fee schedule.  SelectHealth admitted it had underpaid Doe's Austen Riggs approved treatment—covering only $360 per diem as opposed to $420.[50]  Despite conceding this, SelectHealth did not pay the full amount of benefits owed to Doe, and underpaid Doe's psychiatric hospitalization claims by more than 50%.[51]  Smith alleges this systematic underpayment is "not confined" to Doe's claims but to all participants and beneficiaries who sought out-of-network mental health

---

[46] TAC ¶ 70.

[47] TAC ¶ 71.

[48] TAC ¶¶ 72–75.

[49] TAC ¶ 76.

[50] TAC ¶ 103.

[51] TAC ¶ 104.

services at the acute inpatient, residential, partial hospitalization, and intensive outpatient levels of care.[52]

### b. Unreasonable Exercise of Discretion

As discussed, SelectHealth interpreted the Plan definition of "Allowed Amount" for claims as permitting it to set reimbursement rates of out-of-network mental health services by "generally" matching them to "target" rates paid for in-network mental health services. SelectHealth exercised that discretion "unreasonably" by reimbursing out-of-network, inpatient mental health services far less than in-network rates for those same services.[53]

### c. Discriminatory Methodologies for Mental Health Benefits

The reimbursement methodologies for mental health benefits were "more stringent" than those for medical or surgical benefits, in violation of the Parity Act. Specifically, Defendants reimbursed inpatient mental health services, which are provided at an acute level of care, at the same rate it paid for skilled nursing facilities, an intermediate level of care for medical or surgical services. Additionally, Defendants reimbursed residential mental health treatment—an intermediate level of care—at the same rate they paid for lower level of care for medical/surgical services.[54] Moreover, for medical and surgical services, Defendants applied their "matching" policy by setting allowed amounts for in-network and out-of-network services at the exact same amounts. But for intermediate-level mental health services, Defendants set out-of-network allowed amounts 29-44% below the "target" in-network rates.[55] This caused Defendants to

---

[52] TAC ¶ 120.

[53] TAC ¶ 17.

[54] TAC ¶¶ 18–19, 106–19.

[55] TAC ¶ 19.

"materially underpa[y]" out-of-network acute inpatient psychiatric care by reimbursing less than half of the in-network rate.[56]

### d. Failure to Protect Confidential Health Information

On April 17, 2018, Doe executed a SelectHealth Authorization to Release Health Information to her counsel.[57]  Her counsel later submitted multiple requests for information to Defendants, and though counsel requested Doe's sensitive mental health records be sent by encrypted email, documents were instead mailed in non-secure envelopes that arrived torn, in violation of HIPAA.[58]

### e. Failure to Provide Plan Documents

When Doe submitted claims to SelectHealth relating to her care at the Menninger Clinic and the April 10, 2017–May 17, 2017 stay at Austen Riggs that was pre-authorized by Defendants, SelectHealth sent Explanations of Benefits (EOBs) that did not include any reimbursement methodology or citation to Plan terms, and therefore did not provide Doe with notice as to why her claims were not being allowed or paid in full, or that her benefits were being underpaid.[59]  Doe sought Plan documents from IHC,[60] but it refused to produce instruments analyzing nonquantitative treatment limitations or reimbursement methodologies and schedules for out-of-network benefits.[61]  Following the initiation of this action, in response to a discovery

---

[56] TAC ¶ 109.

[57] TAC ¶ 78.

[58] TAC ¶¶ 79–80.

[59] TAC ¶¶ 83–85.

[60] TAC ¶¶ 86–87

[61] TAC ¶¶ 88–90.

motion, Defendants admitted "SelectHealth had no instruments analyzing nonquantitative treatment limitations to produce."[62]

### f.  Inadequate Behavioral Health Provider Network

Smith alleges Defendants violated ERISA and the Parity Act by failing to ensure an adequate network of residential treatment centers, particularly for adults with mental illnesses unrelated to eating disorders or substance abuse.[63]

## PROCEDURAL HISTORY[64]

On October 17, 2018, Plaintiff Jane Doe filed her initial Complaint.[65]  In it, she brought three individual claims for relief under ERISA, specifically, under § 502(a)(1)(B) for denial of benefits, and under § 502(a)(3)(A) and (a)(3)(B) for injunctive relief, to the extent relief was not available under § 502(a)(1)(B).[66]

Following a stipulated motion,[67] Doe filed an Amended Complaint on January 28, 2019.[68]  The Amended Complaint contained the same three individual claims under ERISA and added a fourth claim for relief under § 502(c), for IHC's failure to timely produce Instrument Documents.[69]  On March 12, 2019, Defendants filed a Rule 12(b)(1) Motion to Dismiss Plaintiff's new Fourth Claim for lack of standing.[70]  While the Motion to Dismiss was pending,

---

[62] TAC ¶ 96.

[63] TAC ¶¶ 98–99.

[64] This Order refers to each section of ERISA by the named section in the statute rather than the section as codified, for concision as well as for consistency when referring to case law.  Accordingly, the monetary relief provision of ERISA (codified at 29 U.S.C. § 1132(a)(1)(B)) is referred to as Section 502(a)(1)(B), and the equitable relief provision (codified at 29 U.S.C. § 1132(a)(3)) is referred to as Section 502(a)(3).

[65] Dkt. 2 (Complaint).

[66] *See* Complaint at ¶¶ 73–81.

[67] *See* Dkt. 33 (Stipulation).

[68] Dkt. 34 (Amended Complaint).

[69] *See* Amended Complaint ¶¶ 81–93.

[70] *See* Dkt. 40 (Motion to Dismiss).

then-Chief Magistrate Judge Paul Warner granted Doe's motions to proceed under a pseudonym and modify the court's standard protective order.[71]

Sadly, on or about April 18, 2019, Doe died by suicide.[72]  On June 26, 2019, Linda Smith, as the personal representative for Doe's estate, filed a Motion to proceed in Doe's place,[73] which Defendants did not oppose.[74]  On July 11, 2019, Judge Warner granted that Motion, and Linda Smith was substituted as Plaintiff in the action per Federal Rule of Civil Procedure 25(a)(1).[75]

On August 22, 2019, the undersigned granted Defendants' Motion to Dismiss the Fourth Claim for Relief in an oral ruling, agreeing that Doe had not adequately alleged harm sufficient to confer standing.[76]  The undersigned also granted Plaintiff leave to amend to cure the Fourth Claim for relief considering the identified deficiencies.  Plaintiffs' counsel indicated they would seek leave to amend the complaint to add additional claims in light of new information uncovered during discovery.[77]  Plaintiffs were instructed to file a Motion to Amend within thirty days if they wished to add additional claims.[78]

On September 20, 2019, Smith filed the Second Amended Complaint, which did not add additional claims but did add allegations relevant to the Fourth Claim.[79]  On October 18, 2019,

---

[71] Dkt. 56 (Order Granting Plaintiff's Motion to Proceed Under a Pseudonym).

[72] *See* Dkt. 57-1 (Death Certificate).

[73] Dkt. 57 (Motion to Substitute Party).

[74] Dkt. 59 (Statement of Non-Opposition).

[75] Dkt. 65 (Order Granting Motion to Substitute Party).

[76] *See* Dkt. 72 (Transcript of Oral Ruling of August 22, 2019 Motion Hearing) (hereinafter Transcript); Dkt. 68 (Minute Order Granting Motion to Dismiss Plaintiff's Fourth Claim for Relief).

[77] Transcript at 9:25–10:04.

[78] *See id.* at 10:05–17.

[79] Dkt. 70 (Second Amended Complaint).

Defendants filed a Motion to Dismiss, or in the alternative, to Strike, because Plaintiffs had not

filed for leave to amend before filing the Second Amended Complaint.[80]  The undersigned

denied that Motion on October 25, 2019 because Plaintiff had not added new claims but simply

amended the Fourth Claim, as discussed and permitted in the hearing.[81]

On November 18, 2019, the parties filed a stipulated Motion to transfer to the

undersigned a related case then assigned to Judge Barlow, a proposed class action filed by Linda

Smith against the same Defendants (the Judge Barlow case).[82]  The undersigned denied that

Motion on January 2, 2020, concluding transfer was not appropriate under the factors set out in

Local Rule 83-2.[83]

On September 18, 2020, Smith filed in this case a Motion for leave to file a Third

Amended Complaint.[84]  The Motion explained that during the pendency of the suit, Plaintiff

discovered some covered claims had been underpaid, and sought to pursue a remedy in a

separate class action.  However, following the denial of the Motion to Transfer the Judge Barlow

case, that case had been dismissed by Judge Barlow, who concluded that the claims were

improperly split between the two actions.[85]  Thus, Smith sought leave to file a Third Amended

Complaint that added the claims relating to underpayment to this still-pending litigation.[86]

On October 2, 2020, Defendants filed an Opposition to Smith's Motion for Leave,

arguing that granting leave to amend the Complaint this far into the litigation would be

---

[80] Dkt. 77 (Motion to Dismiss).

[81] Dkt. 79 (Order Denying Motion to Dismiss).

[82] Dkt. 84 (Stipulated Motion to Reassign Case) (requesting related case *Linda Smith v. Intermountain Healthcare, Inc. and SelectHealth, Inc.*, Case No. 2:19-cv-00670-EJF, be reassigned to the undersigned).

[83] Dkt. 90 (Order Denying Motion to Reassign Case) at 2 (citing DUCivR 83-2(g)).

[84] Dkt. 112 (Motion for Leave).

[85] *See id.* 3–4.

[86] *Id.* at 4.

prejudicial.[87]  Magistrate Judge Bennett denied Plaintiff's Motion to Amend on November 17, 2020.[88]  On November 30, 2020, Smith objected to Judge Bennett's decision.[89]  On May 13, 2021, the undersigned sustained Smith's Objection and overruled Judge Bennett's Order.  Smith was granted leave to file a Third Amended Complaint that included the class action claims mirroring those initially asserted in the Judge Barlow case.[90]

Smith filed her Third Amended Complaint on May 28, 2021.[91]  The TAC includes the same four claims asserted in the previous complaints and adds three class action claims against Defendants due to the systematic underpayment of out-of-network mental health services.  Specifically, Smith seeks relief on behalf of the following putative class: "all participants or beneficiaries in ERISA plans whose claim(s) for out-of-network mental health services at the acute inpatient, residential, partial hospitalization, and intensive outpatient levels of care were subjected to Defendants' reimbursement and in-network policies as detailed herein."[92]  Smith alleges the class is numerous, because SelectHealth is Utah's largest claims administrator, and the class could number in the hundreds.[93]  Smith also alleges common questions of law and fact exist as to all members and predominate of any questions affecting solely individual members of the Class, Doe's claims are typical because the reimbursement policies applied to Doe were also

---

[87] Dkt. 123 (Memorandum in Opposition to Motion for Leave).

[88] Dkt. 128 (Memorandum Decision and Order Denying Motion for Leave).

[89] Dkt. 131 (Objection).

[90] Dkt. 147 (Minute Entry for Hearing re: Objection).

[91] Dkt. 150 (Redacted Third Amended Complaint); Dkt. 153 (Sealed Third Amended Complaint).

[92] TAC ¶ 120.

[93] TAC ¶ 122.

applied to members of the class, and that Smith will fairly and adequately protect the interests of the class.[94]

On July 2, 2021, Defendants filed the instant Motion to Dismiss.[95]  In it, Defendants seek partial dismissal of the TAC and move to dismiss Claims Two, Three, Five, Six, and Seven in their entirety, and part of Claim One.  Specifically, Defendants seek to dismiss:

- Claims Two and Three, brought under § 502(a)(3), for being "impermissibly duplicative" of the § 502(a)(1)(B) relief sought in Claim One;

- Claims One through Three, to the extent they seek equitable relief, because the relief requested is not "appropriate or equitable";

- Claims One through Three, to the extent they seek prospective equitable relief;

- The prayer for relief in the form of a surcharge for alleged HIPAA violations, because there is no private right of action for HIPAA violations;

- Claims Five through Seven, for failure to allege the putative class members exhausted administrative remedies;

- Claim Five, for failure to state a plausible class-wide cause of action for benefits due;

- Finally, Claims Five through Seven, because Plaintiff lacks standing and the relief sought is neither appropriate nor equitable.[96]

---

[94] TAC ¶¶ 121, 123–25.

[95] Dkt. 157 (Motion to Dismiss).

[96] *See id.* at 1–2.

Defendants do not move to dismiss the Fourth Claim, brought under § 502(c), which alleges the Plan failed to provide proper documentation.[97]  Nor do Defendants seek to dismiss the First Claim to the extent it seeks monetary relief for benefits owed.[98]

Smith filed an Opposition to the Motion to Dismiss on August 20, 2021.[99]  Defendants replied on September 20, 2021.[100]  The court received oral argument on November 22, 2021.[101]

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[102]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[103]  When determining whether a complaint meets these criteria, the court will "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief."[104]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[105]

---

[97] *Id.* at 3 n.5.

[98] *See* Dkt. 169 (Reply to Opposition) at 1 n.1.

[99] Dkt. 160 (Memorandum in Opposition).

[100] Dkt. 169 (Reply to Opposition).

[101] Dkt. 172 (Minute Entry for Hearing re: Motion to Dismiss).

[102] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[103] *Id.* (citing *Twombly*, 550 U.S. at 556).

[104] *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

[105] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

When a motion to dismiss under Rule 12(b)(1) is based on a facial attack on the complaint's allegations, the plaintiff must establish standing on the face of the complaint.[106]  In evaluating standing on this basis, the reviewing court accepts the allegations in the complaint as true.[107]

Finally, Rule 8 requires that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."[108]  Rule 8 also allows parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."[109] Indeed, as the Tenth Circuit has explained, "[f]ederal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims."[110]

## ANALYSIS

The court considers the Defendants' arguments in the Motion to Dismiss in two sections: first, the arguments concerning Smith's individual claims and second, the arguments concerning the putative class action claims.

### I.        Smith's Individual Claims are Adequately Pleaded

Before discussing Defendants' specific arguments as to why Smith's claims should be dismissed, it is necessary to discuss the statutory framework for bringing claims under ERISA and how that framework has been interpreted by the Supreme Court, the Tenth Circuit Court of Appeals, and the District of Utah.

---

[106] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015).

[107] *Id.*

[108] Fed. R. Civ. P. 8(a)(3).

[109] Fed. R. Civ. P. 8(d)(2).

[110] *Boulware v. Baldwin*, 545 F. App'x 725, 729 (10th Cir. 2013) (citing *Campbell v. Barnett*, 351 F.2d 342, 344 (10th Cir. 1965)).

Section 502(a)(1)(B) authorizes a plan "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[111]  Section 502(a)(3) authorizes a plan "participant, beneficiary, or fiduciary" "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."[112]  In other words, § 502(a)(1)(B) provides monetary relief for benefits due, and § 502(a)(3) "authorizes the kinds of relief typically available in equity in the days of the divided bench."[113]  Finally, the Mental Health Parity and Addiction Equity Act ("Parity Act") is an amendment to ERISA.[114]  The Parity Act requires that insurance plans must not impose more coverage restrictions on mental health or substance use disorder benefits than they impose on medical or surgical benefits.[115]

Defendants state the "principal question" of the Motion to Dismiss is whether Smith may only seek relief under ERISA § 502(a)(1)(B) or whether relief may also be sought under § 502(a)(3).[116]  In recent years, courts in this district have carefully considered the question of whether § 502(a)(1)(B) and § 502(a)(3) claims may be pled simultaneously.  This is largely driven by the absence of direct guidance from either the Supreme Court or the Tenth Circuit.  In

---

[111] 29 U.S.C. § 1132(a)(1)(B).

[112] 29 U.S.C. § 1132(a)(3).

[113] *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 94–95 (2013) (internal citations and quotations omitted).

[114] 29 U.S.C. § 1185a.

[115] 29 U.S.C. § 1185a(a)(3)(A).

[116] Motion to Dismiss at 3.

*Varity Corp. v. Howe*[117] and *CIGNA Corp. v. Amara*,[118] the Supreme Court interpreted the interplay of the relevant ERISA provisions when it comes to awarding remedies *post-trial*.[119] Both cases make clear duplicative relief under the two provisions is not possible, and also indicate the Supreme Court favors the remedy preference of § 502(a)(1)(B) to the equitable relief made possible by § 502(a)(3).[120]  But neither case established "a categorical rule prohibiting Plaintiffs from *pleading* two different causes of action under Section 502(a)(1)(B) and 502(a)(3)."[121]  Because of the lack of any published Tenth Circuit cases on this question, courts in this district, guided by the persuasive reasoning of unpublished Tenth Circuit cases and cases from other circuits, have found *Varity* and *Amara* do not support a categorical rule preventing plaintiffs from simultaneously pleading § 502(a)(1)(B) and § 502(a)(3) claims.[122]

Instead, the inquiry is as follows: "Has the plaintiff alleged alternative theories of liability or suffered distinct injuries to justify pursuing simultaneous causes of action under both Section 502(a)(1)(B) and Section 502(a)(3)?"[123]  In other words, a Plaintiff may not pursue "duplicative" relief under the two provisions or simply "repackage" an (a)(1)(B) claim as an (a)(3) claim.[124] Some courts undertake this analysis by distinguishing between alternative and duplicative

---

[117] 516 U.S. 489 (1996).

[118] 563 U.S. 421 (2013).

[119] *See Varity*, 516 U.S. at 515 (upholding post-trial remedies granted under § 502(a)(3) to individuals unable to obtain relief under 502(a)(1)(B)); *Amara*, 563 U.S. at 438–45 (holding post-trial remedy of reformation of plan terms was equitable relief unavailable under § 502(a)(1)(B) but available under § 502(a)(3)).

[120] *See Varity*, 516 U.S. at 515 ("where Congress elsewhere provided adequate relief for a beneficiary's injury [under § 502(a)(1)(B)], there will likely be no need for further equitable relief [under § 502(a)(3]").

[121] *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1222 (D. Utah 2019) (emphasis added).

[122] *See, e.g.*, *id.* at 1222–26; *M.S. v. Premera Blue Cross*, No. 2:19-cv-01999, 2020 WL 1692820, at *5–*6 (D. Utah April 7, 2020) (holding a Parity Act claim brought under § 502(a)(3) not duplicative of a benefits claim under § 502(a)(1)(B)).

[123] *Christine S.*, 428 F. Supp. 3d. at 1226.

[124] *Id.*

theories of liability, while others ask if the claims seek to remedy two distinct injuries.[125]  But there is no need here to select between these modes of analyses because a claim for benefits under § 502(a)(1)(B) presents both an alternative theory of liability and remedies an injury distinct from a claim brought under the Parity Act via § 502(a)(3).[126]  Indeed, a Parity Act cause of action may only be brought under § 502(a)(3) and thus by nature cannot "repackage" a § 502(a)(1)(B) cause of action.[127]

### a. The § 502(a)(3) Claims are not Impermissibly Duplicative of the § 502(a)(1)(B) Claims

Defendants argue that Smith's second and third claims, brought under ERISA § 502(a)(3), should be dismissed for being "impermissibly duplicative" of the first claim brought under § 502(a)(1)(B).[128]  Defendants specifically argue that under *Varity*, bringing a claim for benefits under § 502(a)(1)(B) means that simultaneously seeking relief under § 502(a)(3) "normally would not be appropriate."[129]  Defendants also argue that because Doe is "now represented by the Estate," "monetary relief would make the Estate whole" and therefore under the particular "circumstances" of this case, in which Doe is deceased, unlike the Plaintiff in *Christine S.*, monetary relief would be "adequate" and § 502(a)(3) is not needed.[130]  Accordingly, the court "can" consider Smith's Parity Act claims under (a)(1)(B) and Smith "does not need" an

---

[125] *Id.* at 1227–29.

[126] *Id.* at 1231; *see also M.S.*, 2020 WL 1692820, at *6 (holding a Parity Act violation brought under § 502(a)(3) seeks different relief and could represent different injuries than a § 502(a)(1)(B) claim).

[127] *Christine S.*, 428 F. Supp. 3d. at 1229 (explaining Parity Act violations may only be brought under § 502(a)(3)); *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1529 n.118 (D. Utah 2016) (discussing history of the Parity Act and its enforcement mechanism under § 502(a)(3)).

[128] Motion to Dismiss at 10–13.

[129] *Id.* at 12 (citing *Varity*, 516 U.S. at 515).

[130] *Id.* at 13; Reply at 3–4.

(a)(3) claim.[131]  Smith rejoins the claims should not be dismissed because Rule 8 permits

alternative pleading, courts in this district have held § 502(a)(3) claims should not be dismissed

at the Motion to Dismiss stage for being duplicative of § 502(a)(1)(B) claims, and finally,

because Defendants do not dispute that Smith has adequately alleged violations of the Parity Act,

which is enforceable only under § 502(a)(3).[132]

The court agrees with Smith.  Smith brings a claim for benefits under § 502(a)(1)(B), and

"to the extent . . . relief sought is not available under 502(a)(1)(B)," seeks relief for the alleged

Parity Act violations under § 502(a)(3).[133]  As discussed, Rule 8 explicitly allows for alternative

pleading, and a Parity Act claim may only be brought under § 502(a)(3).[134]  Defendants do not

dispute that Smith alleges a plausible Parity Act violation, but argue that "the circumstances of

this case"—namely, that Smith has been substituted for Doe and any monetary remedy would

flow to Doe's Estate—dictate that only the § 502(a)(1)(B) claim should proceed.  Defendants

claim *Amara* stands for the proposition Smith can use the § 502(a)(1)(B) claim to bring in her

Parity Act concerns, because in *Amara* the Court observed "a court [may] look outside the plan's

written language in deciding what [its] terms are."[135]  Defendants further claim that Smith brings

"as-applied" and not facial challenges to the Plan, and that this supports a result that the §

502(a)(1)(B) claim can cover Smith's Parity Act violations.[136]  But Defendants cite no case law,

nor is the court aware of any authority, supporting this reading of the statute.[137]

---

[131] Reply at 5.

[132] *See* Opposition at 7–9.

[133] TAC ¶¶ 132–33.

[134] *Christine S.*, 428 F. Supp. 3d at 1229; *Joseph F.,* 158 F. Supp. 3d at 1529 n.118.

[135] Reply at 5 (citing *Amara*, 563 U.S. at 436).

[136] *Id.*

[137] *Cf. Christine S.*, 428 F. Supp. 3d at 1229 (explaining Parity Act violations may only be remedied under § 502(a)(3)).

Additionally, Defendants do not explain why, nor do they cite case law supporting the proposition that, the "circumstances" of Doe's death demand a different result.  Defendants pull lines of case law out of context, but do not identify any authority holding an estate must be treated differently for purposes of pleading causes of action under ERISA, or even any cases that analyze that point directly.  For example, Defendants cite a line from *Christine S.* which states: "if the circumstances of a case indicate that a Section 502(a)(1)(B) remedy is or would be adequate to address the plaintiff's alleged injury, the court need not address a remedy sought under Section (a)(3) for the same injury."[138]  Defendants emphasize the "circumstances of a case" line to argue that because the plaintiffs in *Christine S.* were not estates, not deceased, and one had remaining legal obligations to the other, the case is distinguishable.  But that analysis does not appear in *Christine S.*, and Defendants do not explain how those facts are relevant to *Christine S.*'s holding that § 502(a)(3) claims may be simultaneously plead with § 502(a)(1)(B) claims.

Similarly, Defendants cite *Denise M. v. Cigna Health*, another case in which simultaneous § 502(a)(1)(B) and § 502(a)(3) claims survived at the pleading stage.[139]  Defendants emphasize that the plaintiff in *Denise M.* was not an estate, and quote a line from the case emphasizing that Plaintiff might rely on § 502(a)(3) for prospective relief: "moving forward [plaintiff] could still be subject to terms of the Plan . . . that violate the Parity Act."[140]  But Defendants ignore a line from a few sentences before, which also states that if the plaintiff could not obtain relief under § 502(a)(1)(B), the court could still find "Defendants violated the Parity

---

[138] Reply at 3–4 (citing *Christine S.*, 428 F. Supp. 3d at 1222).

[139] Reply at 4 (citing *Denise M. v. Cigna Health*, No. 2:19-cv-975, 2020 WL 5732321, at *8 (D. Utah Sept. 24, 2020)).

[140] *Id.*

Act by imposing more stringent medical necessity criteria on mental health and substance abuse treatment and that [Plaintiff] was injured by that violation. *[Plaintiff's] sole remedy in such a case would be through 502(a)(3).*"[141]  In other words, *Denise M.* recognized that § 502(a)(3) may be necessary to remedy past Parity Act violations.  Similarly, Smith's § 502(a)(3) claims could be necessary to remedy Parity Act violations arising from Defendants' alleged systematic undervaluation of mental health treatment if § 502(a)(1)(B) relief is not available.  Neither *Christine S.* nor *Denise M.* can reasonably be read to stand for the proposition that Smith's status as the representative of Doe's estate changes the analysis.

Defendants further argue that this case is "akin to several in which courts dismissed (a)(3) claims at the pleading stage as impermissibly duplicative," and cite two cases in support.[142]  In *E.M. v. Humana*, the court dismissed § 502(a)(3) claims brought under the Parity Act when plaintiffs "failed to include sufficient allegations identifying the discriminatory processes, strategies, standards, or other factors or criteria used to deny benefits."[143]  Because the Parity Act violations were not sufficiently pleaded, there was no separate injury under § 502(a)(3) and that claim was dismissed.[144]  In *K.H.B. v. UnitedHealthcare Insurance Co.*, a § 502(a)(3) claim was dismissed when plaintiffs alleged the same injury as under a § 502(a)(1)(B) claim: "the denial of coverage for medically necessary mental health treatment."[145]  Because plaintiffs did not allege a separate injury, the court found plaintiffs has repackaged their § 502(a)(1)(B) claim and

---

[141] *Denise M.*, 2020 WL 5732321, at *8.

[142] Reply at 4 (citing *E.M. v. Humana*, No. 2:18-cv-789, 2019 WL 4696281, at *5 (D. Utah Sept. 26, 2019) and *K.H.B. v. UnitedHealthcare Insurance Co.*, No. 2:18-cv-795, 2019 WL 4736801, at *4–5 (D. Utah Sept. 27, 2019)).

[143] *E.M.,* 2019 WL 4696281, at *4.

[144] *See id.*

[145] *K.H.B.*, 2019 WL 4736801, at *4.

dismissed the duplicative § 502(a)(3) claim.[146]  Both cases are easily distinguishable, because Defendants do not argue that Smith has failed to adequately allege Parity Act violations.[147] Because the Parity Act violations are adequately pleaded, Smith has alleged a separate injury. Therefore, the § 502(a)(3) claims remedy a separate injury and are not duplicative of the § 502(a)(1)(B) claims.

The other cases Defendants rely on in their Motion to Dismiss to argue Plaintiff should not be able to simultaneously plead § 502(a)(1)(B) and (a)(3) claims are similarly unavailing. Two take up the question of whether duplicative recovery under § 502(a)(3) is appropriate *at the close of a case*.  As discussed, *Varity* does not stand for the proposition there is a categorical bar to *pleading* both § 502(a)(1)(B) and § 502(a)(3) causes of action.[148]  And *Rochow* explicitly states a plaintiff *may* bring claims under § 502(a)(1)(B) and § 502(a)(3) as long as the § 502(a)(3) claim "is based on an injury separate and distinct from the denial of benefits or where the remedy afforded . . . under § 502(a)(1)(B) is otherwise shown to be inadequate."[149]

The cases Defendants cite that are at the pleading stage are distinguishable, as they explore what types of relief are appropriate to seek under § 502(a)(3).  In *Mertens v. Hewitt*, Plaintiff did not seek to bring simultaneous § 502(a)(1)(B) and § 502(a)(3) claims.  Rather, the court held a Plaintiff could not bring a claim under § 502(a)(3) alone to recover losses caused by a non-fiduciary's knowing participation in a breach of fiduciary duties.[150]  Similarly, in *Callery*

---

[146] *See id.*

[147] *See* Reply at 5 (not contesting that Smith adequately pleaded violations of the Parity Act but arguing Parity Act violations "can [be] consider[ed]" under § 502(a)(1)(B)).

[148] *See Varity*, 516 U.S. at 515; *Christine S.*, 428 F. Supp. 3d at 1222 ("*Varity* . . . [did] not establish a categorical rule prohibiting Plaintiffs from pleading two different causes of action under Section 502(a)(1)(B) and Section 502(a)(3).").

[149] *Rochow v. Life Insurance Corporation of America*, 780 F.3d 364, 372 (6th Cir. 2015).

[150] 508 U.S. 248, 250, 53–54 (1993).

*v. U.S. Life Insurance Company in the City of New York*, Plaintiff sued under § 502(a)(3) alone, and the question was whether § 502(a)(3) was an appropriate vehicle for a non-plan participant to obtain monetary compensation from the plan.[151]   *Negley v. Breads of the World Med. Plan* stands for the unremarkable proposition that Plaintiffs may not seek payment of policy proceeds under § 502(a)(3); it does not stand for the proposition that a Plaintiff may not plead causes of action under § 502(a)(1)(B) and § 502(a)(3) based on separate injuries to obtain separate relief.[152]   And in *Sullivan-Mestecky v. Verizon Communications, Inc.*, the issue was whether plaintiff, the beneficiary of a life insurance policy, sought an "impermissible remedy" by seeking to redress fiduciary violations under § 502(a)(3).[153]   As discussed, Smith seeks payment for wrongfully denied benefits under § 502(a)(1)(B) *and* permissible relief under § 502(a)(3) for Parity Act violations.

Because Smith plausibly alleges Parity Act violations by Defendants, because those violations may only be plead under § 502(a)(3), and because the Federal Rules permit alternate pleading, Smith's § 502(a)(3) claims are not "impermissibly duplicative" and will not be dismissed at this stage.   Smith's § 502(a)(3) claims seek different relief based upon a different injury than the § 502(a)(1)(B) claims for denial of benefits.

### b.  Claims Two and Three are not Dismissed for Seeking Equitable Relief

Defendants also argue the relief sought in the first three claims for relief is neither "appropriate" nor "equitable," and as a result Claims Two and Three should be dismissed entirely, and any equitable relief sought in Claim One should also be dismissed.   Specifically, Defendants argue that Smith is seeking only payment to the Estate for the denied and underpaid

---

[151] 392 F.3d 401, 404–06 (10th Cir. 2004).

[152] 22 F. App'x 692, 695 (10th Cir. 2007).

[153] 961 F.3d 91, 99 (2d Cir. 2020).

insurance claims, and cite cases in which § 502(a)(3) claims were dismissed where courts determined only legal, not equitable, relief was being sought.[154]  In other words, Defendants argue the analysis must consider "both the relief and the basis for the relief" to determine whether the relief sought is appropriate equitable relief.  Smith counters that Defendants do not address the restitution Smith seeks for the alleged Parity Act violations.  Smith also avers that she seeks "classically" equitable relief, such as disgorgement, restitution, and surcharge, for the Parity Act violations.[155]

Again, the court agrees with Smith.  As discussed, the alleged Parity Act violations may only be remedied under § 502(a)(3).  The equitable relief sought is, at the pleading stage, appropriate.  The Supreme Court has recognized restitution to be equitable relief available under § 502(a)(3).[156]  In *CIGNA Corp. v. Amara*, the Supreme Court also held surcharge is available under § 502(a)(3) upon a showing of actual harm.[157]  At the pleading stage, a plausibly-alleged Parity Act violation paired with appropriate equitable relief is sufficiently pleaded.[158]

The cases Defendants cite are not the contrary.  In *Mertens v. Hewitt Associates*, plaintiffs brought suit against a non-fiduciary who, it was alleged, knowingly participated in a

---

[154] *See* Motion to Dismiss at 14–15.

[155] Opposition at 10–11.

[156] *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 253 (2000).  *Harris* also discussed disgorgement being an available equitable remedy, but did not explicitly hold it was available under ERISA since the action in *Harris* related to restitution.  *See id.* at 250–51.

[157] 563 U.S. 421, 444 (2011).

[158] *See, e.g.*, *Christine S.*, 428 F. Supp. 3d 1209, 1216 (D. Utah 2019).  Plaintiffs in that case sought wide-ranging equitable relief under § 502(a)(3), including a declaration that defendants violated the Parity Act, injunction ordering Defendants to comply with the Parity Act, reformation of the plan, disgorgement of wrongfully obtained funds, an order requiring an accounting of funds Plaintiffs allege Defendants wrongfully withheld, a surcharge requiring defendants pay plaintiffs make-whole relief for their loss, equitable estoppel, and restitution.  The court found this relief would allow plaintiffs to enforce their Parity Act rights as separate from their § 502(a)(1)(B) wrongful denial of benefits claim, and did not dismiss the § 502(a)(3) claims, because selecting between these many possible remedies at the pleading stage would be "an impossible task."  *Id.* at 1231, 1233.

breach of a fiduciary duty.[159]  Because § 502(a)(2) is limited to suits against fiduciaries,[160] the plaintiffs sought to use § 502(a)(3) to obtain "other appropriate equitable relief" against the nonfiduciary, which the court held ERISA's statutory scheme did not support.[161]  In *Callery*, the court held a plaintiff and non-plan participant could not seek payment of policy proceeds under § 502(a)(3) because such relief would be legal, and could not seek injunctive relief compelling payment of the proceeds because the insurance company had been dismissed from the suit.[162]  In both cases, plaintiffs sought relief under sections of ERISA that could not accommodate the requested relief.  Accordingly, dismissing the § 502(a)(3) claims at the pleading stage was appropriate.  But here, Smith seeks relief for Parity Act violations, which, as discussed, may only be redressed under § 502(a)(3).

Where a § 502(a)(3) claim has been plausibly *alleged*, the issue whether the requested relief is "appropriate equitable relief" can only be resolved at the stage where relief is awarded. The other cases that Defendants cite from beyond the pleading stage illustrate this point.  In *Montanile v. Board of Trustees*, the court held that a plan could not use the equitable relief in § 502(a)(3) to seek payment from a participant who spent settlement funds on non-traceable items—facts that became apparent at the summary judgment phase.[163]  In *Amara*, the Court reversed and remanded when a district court awarded reformation of plan terms under § 502(a)(1)(B), and suggested that based on the facts of the case, such relief—because it was

---

[159] 508 U.S. 248, 249–50 (1993).

[160] *See* 29 U.S.C. § 1132(a)(2) (provision of ERISA allowing plan participants to obtain relief for breach of fiduciary duty).

[161] *Mertens*, 508 U.S. at 253.

[162] *Callery v. U.S. Life Ins. Co. in the City of New York*, 392 F.3d 401, 404–05 (10th Cir.2004).

[163] 577 U.S. 136, 140–41, 149–50 (2016).

equitable in nature—would be available under § 502(a)(3).[164]  In *Great-West Life & Annuity Insurance Company v. Knudson*, an insurance company appealed from a summary judgment order which had denied the company reimbursement under § 502(a)(3) from plan participants who received a third-party award following a car accident.  The Supreme Court affirmed, holding that seeking to impose liability for a contractual obligation to pay money was legal, not equitable, relief.[165]  In *Phelan v. Wyoming Associated Builder*s, the court considered whether the remedy of reinstatement imposed by the district court following a bench trial was equitable in nature if it had the potential to pay money for an unpaid claim, and found it was because the remedy broadly reinstated coverage for an uncovered month and was not just designed to pay an unpaid claim.[166]

As in *Great-West Life*, *Amara*, *Montanile*, and *Phelan*, the remedies available in this case—if any—will be decided at a later date.  Defendants are correct that when the available remedies are determined, the correct legal analysis will consider the type of relief sought and the basis for the relief.  Under Supreme Court precedent, including *Varity*, duplicative remedies will not be available.  However, it would be premature at the motion to dismiss stage to dismiss plausibly-alleged § 502(a)(3) claims because of the possibility that relief under § 502(a)(1)(B) could be sufficient to redress the injuries ultimately proven.[167]

---

[164] *CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36, 445 (2011).

[165] 534 U.S. 204, 207–10 (2002).

[166] 574 F.3d 1250, 1254–55 (10th Cir. 2009).

[167] Indeed, in *Amara*, the district court initially granted relief under § 502(a)(1)(B), but the Supreme Court concluded that relief was improper and indicated plaintiffs could seek a remedy under § 502(a)(3).  *CIGNA Corporation v. Amara*, 563 U.S. 421, 425, 439-40 (2011).  As the *Christine S.* court observed, this outcome bars dual recovery but would not have been possible had dual causes of action been precluded at the beginning of litigation.  *Christine S.*, 428 F. Supp. 3d. at 1232–33.  Here too, it would be premature to dismiss Claims Two and Three based only on the possibility relief under Claim One might be sufficient.

### c. **Plaintiff does not seek Prospective Equitable Relief**

Defendants argue that Smith's request for "prospective equitable relief" should be dismissed from each individual claim under Rule 12(b)(1) or 12(b)(6) for seeking relief that is unavailable. Defendants specifically argue Smith lacks standing to ask for prospective relief as a non-member of the Plan and that such relief is not authorized under ERISA.[168] Smith clarifies in Opposition that she does not seek prospective relief.[169] As an example, Smith notes that removal of Defendants as plan fiduciaries is not prospective relief, because it would be a way to ensure benefits owed to Smith based on past violations are calculated in compliance with the Parity Act.[170]

Defendants argue in reply that the TAC does not request remand to the Plan for reconsideration, and moreover that it could not request remand because "that is not an appropriate remedy in a dispute over benefits."[171] For support, Defendants cite two out-of-district cases: *Cross v. Fleet Reserve Ass'n Pension Plan*,[172] which held that removal of a plan fiduciary is not an appropriate equitable remedy for redressing the non-payment of benefits to plaintiffs); and *Reid v. Gruntal & Co., Inc.*,[173] which held that because removal of a plan fiduciary is available equitable relief under § 502(a)(2), it is not available under § 502(a)(3). Notably, *Cross* made the determination about the appropriateness of the § 502(a)(3) remedy at the summary judgment stage, after allowing Plaintiffs to plead simultaneous § 502(a)(1)(B), §

---

[168] Motion to Dismiss at 16–17.

[169] Opposition at 11–12.

[170] *Id.* at 12.

[171] Reply at 2–3.

[172] No. WDQ-05-0001, 2006 WL 6461994, at *2 (N.D. Md. Dec. 18, 2006).

[173] 763 F. Supp. 672, 676 (D. Me. 1991).

502(a)(2), and § 502(a)(3) claims, and *Reid* did so on a motion in limine just before trial.[174] Neither case stands for the proposition that the determination of "appropriate equitable relief" can be made at the pleading stage.  Nor is the court aware of any authority, much less binding authority, so stating.

Defendants are correct that Smith would not have standing to seek prospective equitable relief.[175]  But from examining the face of the complaint, it is not apparent that any of the equitable relief sought is prospective.  Smith states in her Opposition that she does not seek prospective equitable relief, and Defendants do not dispute this in reply except to argue that one example of possible non-prospective relief is not available, as discussed.  Therefore, the Motion to Dismiss will not be granted on this ground.  Moreover, the court will not dismiss Claims Two and Three on the basis of the equitable relief sought—as *Cross* and *Reid* both illustrate, the determination of "appropriate equitable relief" will be made well after the pleading stage.

### d.  Plaintiff's Prayer for Relief of Surcharge for Privacy Violations Cannot be Dismissed Under Rule 12(b)(6) and will not be Stricken from the Pleadings

Defendants next argue that Smith's prayer for surcharge for alleged violations of HIPAA should be "dismissed pursuant to Rule 12(b)(6) or stricken" because "there is no private right of action for HIPAA violations."[176]  In Opposition, Plaintiffs argue this relief is requested based on Defendants' alleged violation of the "terms of the plan," which is part of § 502(a)(3): a

---

[174] *See Cross*, 2006 WL 6461994, at *1; *Reid*, 763 F. Supp. at 673.

[175] *See* Motion to Dismiss at 16–17.  Defendants cite extensive case law for the proposition that Smith would not have standing to seek prospective equitable relief, including Supreme Court cases *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 181 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); and *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  As discussed, because Smith clarifies in Opposition that she does not seek prospective equitable relief, this argument is moot.

[176] Motion to Dismiss at 17–18 (citing TAC at 50, Prayer for Relief subparagraph F).

"participant" may bring a civil action to seek "appropriate equitable relief to redress such violations."[177]

As an initial matter, the court must distinguish a prayer for relief from a claim for relief. While a *claim for relief* can be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, the Tenth Circuit has held that a Rule 12(b)(6) motion to dismiss is not the proper vehicle for addressing a *prayer for relief*, which is not part of the cause of action.[178]   Accordingly, the court will not dismiss part of the Prayer for Relief under Rule 12(b)(6).

Moreover, the court will not strike sub-paragraph F from the Prayer for Relief.  Though Defendants do not clarify under which Federal Rule they demand the court to strike the requested relief, such a request could only come under Rule 12(f), which "governs what a court may strike from a pleading."[179]   Under Rule 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."[180]   Motions to strike are generally "viewed with disfavor by the federal courts and are infrequently granted."[181]   Generally, to succeed on a motion to strike under Rule 12(f), the moving party must demonstrate that the challenged allegations are entirely unrelated to the controversy and are prejudicial.[182]   An allegation is considered prejudicial when it "confuses the issues or is so lengthy and complex

---

[177] Opposition at 16 (citing 29 U.S.C. § 1132(a)(3)(B)(i)).

[178] *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 901 (10th Cir. 2011) ("[T]he prayer for relief is no part of the cause of action and the parties are entitled to such relief and to such judgment as the complaint makes out.") (internal citations and quotations omitted); *see also* 5 Wright & Miller, Federal Practice & Procedure § 1255 (4th ed.) ("[T]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.").

[179] *Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) (internal citations and quotation omitted).

[180] Fed. R. Civ. P. 12(f).

[181] *United States v. Patriot Ordnance Factory USA Mach. Gun*, 378 F. Supp. 3d 1099, 1101 (D. Utah 2019) (citation omitted).

[182] *Carvana v. MFG Fin., Inc.*, No. 2:07-CV-00128-DAK, 2008 WL 4279588, at *1 (D. Utah Sept. 18, 2008).

that it places an undue burden on the responding party."[183]  Finally, "any doubt as to the utility of the material to be stricken should be resolved against the motion to strike."[184]

Here, Defendants have not demonstrated the challenged subsection of the Prayer for Relief is "entirely unrelated to the controversy" or "prejudicial."  Defendants cite *LaRue v. DeWolff, Boberg, & Assocs., Inc.* and *Dotson v. United States* for the proposition that "ERISA only permits limited claims to recover for losses to a plan or a 'plan account,' not personal losses."[185]  Notably, *Dotson* was not an ERISA case and only made this observation in *dicta*.[186] The *LaRue* court held that a plan participant seeking relief under § 502(a)(2), for breach of fiduciary duty, would not have a remedy under § 502(a)(2) for individual injuries distinct from plan injuries, but the provision would authorize recovery for breaches that impaired the value of assets in a participant's individual account.[187]  Neither of these cases supports the argument that part of a prayer for relief, related to an adequately-pleaded § 502(a)(3) claim, should be stricken at the pleading stage.  And neither case suggests leaving the challenged subsection in the Prayer for Relief would be prejudicial or so entirely unrelated to the controversy it would confuse the issues.

Indeed, as Smith argues in Opposition, the requested relief related to the privacy violations is based on Defendants' alleged violation of the "terms of the plan," and thus fits

---

[183] *MEMdata, LLC v. Intermountain Healthcare, Inc.*, No. 2:08-CV-190-TS-PMW, 2009 WL 10689800, at *1 (D. Utah Apr. 8, 2009) (internal quotations and citations omitted).

[184] *Id.*

[185] Motion to Dismiss at 18 (citing *LaRue v. DeWolff, Boberg, & Assocs., Inc.*, 552 U.S. 248, 251 (2008) and *Dotson v. United States*, 87 F.3d 682, 685 (5th Cir. 1996)); *see also* Reply at 7–8.

[186] In fact, the *Dotson* court was taking up the question, arising from an ERISA class action settlement, of how a settlement award could be taxed.  The court was clear: "this case is not an ERISA case.  It is an income tax case involving the tax treatment of a final settlement of a claim for damages under ERISA that was concluded before the issue of first impression decided by the sharply-divided *Mertens* court was even clearly foreshadowed."  *Dotson*, 87 F.3d at 686.

[187] *LaRue*, 552 U.S. at 256.

squarely under the claims for relief brought under § 502(a)(3).[188]  Defendants do not argue keeping this section of the prayer for relief in the pleadings is prejudicial, nor is any prejudice apparent.  The allegation of privacy violations and corresponding requested relief does not "confuse the issues," and is not "so lengthy or complex" it places an "undue burden" on Defendants.  As the Motion to Dismiss notes, the corresponding allegations appear in four paragraphs of the Complaint and the requested relief is just one line.[189]  Because the court must resolve "any doubt as to the utility of the material against the Motion to Strike," the court declines to strike subparagraph F of the prayer for relief from the pleadings.  The court likewise declines to strike the allegation of emotional distress, as requested by Defendants in a footnote.[190]

## II.     The Putative Class Action Claims are Adequately Pleaded

Next, the court turns to Defendants' arguments why Claims Five through Seven, which make claims on behalf of the putative class, should be dismissed.  Before discussing the merits of those arguments, it is necessary to distinguish between Rule 8 pleading requirements and Rule 23 Class Certification requirements, because many of the Defendants' arguments address issues that will be taken up at the Motion for Class Certification.

"[A] class action does not exist merely because it is so designated by the pleadings."[191] A class complaint must "notif[y] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may

---

[188] Opposition at 16.

[189] Motion to Dismiss at 17 (citing TAC ¶¶ 78–81 and Prayer for Relief subparagraph F).

[190] *See* Motion to Dismiss at 18 n.13.

[191] *Rossin v. S. Union Gas Co.*, 472 F.2d 707, 712 (10th Cir. 1973).

participate in the judgment."[192]   However, "[n]o greater particularity is necessary in stating the

claim for relief in a class action than in other contexts."[193]   The complaint should set forth

sufficient allegations indicating a class action could be maintained under the Rule 23

requirements.[194]   But if the court determines the representative case is adequately pleaded, it

should determine whether the requirements of Rule 23 are actually met in an appropriate hearing,

rather than "summarily dismiss" the action before a record can be developed.[195]   Accordingly,

defendants cannot seek to dismiss an adequately-pleaded class action until plaintiffs "have been

afforded a fair opportunity to develop the facts."[196]   It is true that a putative class action

complaint should be dismissed if the named plaintiff's individual claims fail to state a claim for

relief.[197]   But where a class action complaint adequately states a plausible claim for relief, the

proper way to challenge the continuance of the class claims is during Rule 23 certification.[198]

Additionally, on the issue of standing, the Tenth Circuit is clear that as long as a named

Plaintiff has standing to bring a claim, the question of the extent of relief that may be available to

the class—for instance, the reach of an injunction—may only be answered "by asking whether

[Plaintiff] may serve as a representative of a class that seeks such relief," and to answer that

question, it is "necessary" to apply Rule 23.[199]   In other words, that determination is premature at

---

[192] *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 555 (1974).

[193] 7B Wright and Miller, Fed. Prac. & Proc. Civ. § 1798 (3d ed.).

[194] *See Washington v. Safeway Corp.*, 467 F.2d 945, 947 (10th Cir. 1972).

[195] *Rossin,* 472 F.2d at 711–12 (10th Cir. 1973).

[196] *Riggs v. City of Albuquerque*, 916 F.2d 582, 586 (10th Cir. 1990).

[197] *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006).

[198] *See* 7B Wright & Miller, Fed. Prac. & Proc. Civ. § 1798 (3d ed.).

[199] *Colo. Cross Disability Coal. v. Abercrombie & Fitch, Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014).

the pleading stage where a claim has been adequately pleaded and the plaintiff has demonstrated standing.

Under Rule 23, "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action."[200]  As the Supreme Court has explained, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[201]  The burden of establishing the right to bring an action under Rule 23 falls on the Plaintiff, and "the failure to meet that burden may result in a decision *to deny class certification*."[202]  But "this does not mean the litigant bringing the action as a representative must establish the merits of the case before a preliminary determination of the class-action question can be made."[203]  It is during Rule 23 certification that the court will "probe behind the pleadings," and determine whether Rule 23 has been satisfied.[204]

Guided by these standards, the court turns to Defendants' arguments that Smith's class allegations brought in Claims Five, Six, and Seven should be dismissed.

### a. Plaintiff does not have to Allege that each Putative Class Member Exhausted Administrative Remedies to Maintain a Putative Class Action

Defendants argue that Smith's claims for class relief (Claims Five, Six, and Seven) "should be dismissed pursuant to 12(b)(1) or 12(b)(6) for failure to exhaust administrative remedies" because the TAC does not allege each putative class member exhausted their

---

[200] Fed. R. Civ. P. 23(1)(A).

[201] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (internal citations and quotation omitted).

[202] 7B Wright & Miller, Fed. Prac. & Proc. Civ. § 1798 (3d ed.).

[203] *Id.*

[204] *Comcast Corp.*, 569 U.S. at 34.

administrative remedies.[205]  Smith responds that only the named Plaintiff in an ERISA class action needs to plead exhaustion.  Smith also argues that many cases have held failure to exhaust is an affirmative defense, not a pleading requirement.[206]

As an initial matter, Defendants do not cite any case law holding that failure to exhaust administrative remedies is a pleading requirement for anyone but a named plaintiff.  Indeed, one case Defendants cite supports the contrary point that administrative exhaustion is not a pleading requirement:  *Jones v. Bock* specifically holds that failure to exhaust administrative remedies is not a pleading requirement in the Prison Litigation Reform Act context.[207]  In *Heimeshoff v. Hartford Life & Acc. Insurance Company*, a non-class action ERISA case which Defendants also cite, the Supreme Court observes a plaintiff must exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B).[208]  But as Smith argues, Defendants do not dispute that Doe exhausted her administrative remedies, and the Tenth Circuit has previously observed that only class representatives must exhaust their administrative remedies to plead a § 502(a)(1)(B) claim on behalf of a class.[209]

The other cases Defendants cite are not to the contrary.  Two of the cases are not class actions, and simply stand for the proposition that an ERISA Plaintiff must plead exhaustion to sustain a § 502(a)(1)(B) or § 514 claim.[210]  In two other cases cited by Defendants, ERISA suits were dismissed when named plaintiffs in putative class actions seeking relief under §

---

[205] Motion to Dismiss at 18–20.

[206] Opposition at 12–14.

[207] *Jones*, 549 U.S. 199, 217 (2007).

[208] 571 U.S. 99, 102 (2013).

[209] *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 n.5 (10th Cir. 2007) (overruled on other grounds by *Holcomb v. Unum. Life Ins. Co. of America*, 578 F.3d 1187 (10th Cir. 2009)).

[210] *See Teeter v. Lofthouse Bakery Products, Inc.*, No. 1:08-cv-048, 2009 WL 1507158, at *2 (D. Utah May 28, 2009); *Karls v. Texaco, Inc.*, 139 F. App'x 29, 32–33 (10th Cir. 2005).

502(a)(1)(B) and § 502(a)(2) admitted they had not exhausted administrative remedies.[211]  Here, the TAC alleges—and Defendants do not dispute—that Doe exhausted her administrative remedies.[212]  Because the named Plaintiff in the instant case has adequately pleaded exhaustion, this case is distinguishable from cases in which claims were dismissed when the plaintiffs did not plead exhaustion.

In Reply, Defendants cite two additional cases for the proposition that "[g]enerally . . . putative class members must allege [exhaustion]."[213]  Neither case is availing.  Rather, both stand for the proposition this question must be reserved for Rule 23 certification.  The first, *Coffin v. Bowater Inc.*, is an out-of-district case taking up the question of exhaustion under ERISA on a Rule 23 Motion in which the named Plaintiffs had asserted the putative class members did not need to pursue or exhaust their internal ERISA remedies.[214]  Here, Smith has made no such argument.  The question of whether class members have to demonstrate exhaustion is one that will be taken up at the Rule 23 stage.

The second case, *Arctic Slope Native Association, Ltd. v. Sebelius*, is not an ERISA case and supports the opposite conclusion: the underlying class action complaint was *not* dismissed at the pleading stage because putative class members did not exhaust administrative remedies— exhaustion only became an issue in a later action concerning whether the putative class members of the would-be class action received the benefit of equitable tolling.[215]  In the absence of any

---

[211] *Whitehead v. Oklahoma Gas & Elec. Co.*, 187 F.3d 1184, 1188 (10th Cir. 1999); *Baker v. Comprehensive Employee Solutions*, 227 F.R.D. 354, 357 (D. Utah 2005).

[212] *See* Reply at 9 (emphasizing that Smith did not plead putative class members exhausted administrative remedies, but not arguing Smith failed to plead exhaustion).

[213] *Id.* (citing *Coffin v. Bowater Inc.*, 224 F.R.D. 524, 526 (D. Me. 2004) and *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 796 (Fed. Cir. 2009)).

[214] *Coffin*, 224 F.R.D. 524 at 526.

[215] *Arctic Slope*, 583 F.3d at 789, 794.

authority holding that a plaintiff must plead that all putative class members have all exhausted their administrative remedies prior to the class certification stage, the court does not find that the class claims must be dismissed on this basis.[216]

Moreover, even if failure to plead putative class members exhausted administrative appeals barred a § 502(a)(1)(B) claim, such a rule would not preclude the § 502(a)(3) claims. The Defendants cite no cases holding § 502(a)(3) claims are subject to an exhaustion requirement.  Indeed, the Sixth Circuit has held that exhaustion is not a requirement where plaintiffs seek to remedy a plan-wide use of improper methodology using the injunctive relief of § 502(a)(3).[217]  Even if failure to plead the putative class members' exhaustion were a reason to dismiss Claim Five at this stage, the court could not dismiss Claims Six and Seven, each brought under § 502(a)(3), for the same reason.

The issue of exhaustion as it relates to the § 502(a)(1)(B) claims is an issue properly taken up at the class certification stage.  At this stage, the court will not dismiss the class-action claims based on this argument.

### b.  Doe has Pleaded a Plausible Class-Wide Action

Defendants argue that Claim Five, brought on behalf of the putative class members against Defendants for unpaid benefits under § 502(a)(1)(B), should be dismissed for "failure to state a plausible class-wide cause of action."  Specifically, Defendants argue this claim is "speculative" because "Plaintiff does not even allege putative class members submitted claims,

---

[216] For this reason, Defendants' argument in the Reply brief about the difference between contractually-required exhaustion and the judicial doctrine of exhaustion, *see* Reply at 9, is a distinction without a difference—no matter which type of exhaustion is at issue, only Smith needs to plead it at this stage.

[217] *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005).  Moreover, a case Defendants cite for the proposition that "failure to exhaust precludes another type of ERISA action," Motion to Dismiss at 20, holds the opposite: in *Hitchcock v. Cumberland University 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017), the Sixth Circuit explicitly held that for statutory ERISA claims, there is no exhaustion requirement.

much less had them denied."[218]  Defendants also state that this Claim alleges a fiduciary-breach

action, which is not properly brought under § 502(a)(1)(B).[219]  Smith argues that Defendants

misinterpret Claim Five, which "alleges that by violating ERISA's parity and non-discrimination

provisions, not the fiduciary duty provisions, [Defendants] wrongfully denied benefits," which is

"a classic (a)(1)(B) claim."[220]  Smith further argues there are sufficient allegations going toward

the class-wide underpayments.[221]

The court again agrees with Smith.  First, the TAC does not bring a claim for breach of

fiduciary duty under § 502(a)(2) on behalf of either Smith or the class.[222]  Second, the §

502(a)(1)(B) claim brought on behalf of the class has been adequately pleaded beyond a

speculative level.  As discussed, at the pleading stage, a plaintiff needs to plausibly set out class

claims that could meet the requirements of Rule 23 but need not provide the evidence and

argumentation that would be necessary to support a class certification motion.  Under Rule 23(a),

the prerequisites to maintaining a class action are: (1) numerosity, (2) common questions of law

or fact, (3) typicality, and (4) that the representatives will adequately protect the interests of the

class.[223]  Here, Smith has plausibly alleged that Defendants are the largest private employer in

the state of Utah and that they systematically underpaid claims for out-of-network mental health

treatment by using an outdated in-network comparison chart.[224]  Accordingly, members of the

Plan who sought out-of-network mental health treatment may not have been fully reimbursed for

---

[218] Motion to Dismiss at 21.

[219] *Id.*

[220] Opposition at 14.

[221] *Id.* at 14–15.

[222] *See* TAC ¶¶ 127–45 (bringing claims for relief under § 502(a)(1)(B), § 502(a)(3), and § 502(c)).

[223] Fed. R. Civ. P. 23(a).

[224] *See* TAC ¶¶ 3, 103.

any claims they brought: "Defendants' violations of the Plan, ERISA, and the Federal Parity Act were not confined to their benefit calculations for [Doe]'s claims."[225]  Smith has plausibly alleged that Defendants underpaid benefits due to putative class members in violation of § 502(a)(1)(B), and therefore has adequately alleged the potential class is numerous and that their claims involve common questions of law and fact surrounding the underpaid claims.  Smith's extensively pleaded account of Doe's attempts to have out-of-network mental health care bills reimbursed also sufficiently alleges, at this stage, that Doe's claims are typical of class members who sought out-of-network mental health treatment, and that Smith would adequately protect the interests of this class.[226]  These allegations are sufficient to make out a § 502(a)(1)(B) claim for benefits on behalf of the putative class.  It is at Rule 23 certification when the court will look behind the pleadings to see if class certification is appropriate given the facts of the case and the particulars of the putative class members.

### c.   Claims Five Through Seven Seek Appropriate Equitable Relief

Finally, Defendants argue that the equitable relief sought in Claims Five through Seven should be dismissed pursuant to 12(b)(6) and 12(b)(1) because "Plaintiff lacks standing and such relief is not appropriate or equitable," as elucidated in Defendants' arguments about the First through Third claims for relief.[227]

First, as discussed above, Smith does not seek prospective relief on behalf of Doe or the class.  The court will not dismiss the class claims for this reason.  As such, Defendants' citations

---

[225] *Id.* ¶ 120.

[226] *See id.* ¶¶ 120–26.

[227] Motion to Dismiss at 22–23.

to cases in which putative class actions were dismissed or not certified based on the named

Plaintiffs not demonstrating standing are inapposite.[228]

Second, to the extent this argument is based on the notion that the relief sought is not

"appropriate" nor "equitable," the court rejected that argument as to Smith's individual claims

because the § 502(a)(3) claims were adequately pleaded.  Based on the adequately alleged plan-

wide underpayment of claims in violation of the Parity Act, which may be enforced under §

502(a)(3), the court finds that Claims Six and Seven are also adequately pleaded, and the

equitable relief sought is appropriate.

Finally, Defendants' argument in Reply that "Plaintiff does not have standing to bring

class claims challenging, or to seek relief relating to, reimbursement methodologies for partial

hospitalizations or intensive outpatient treatment, because these are services she never requested

or received," is not well taken in light of Tenth Circuit precedent.[229]  In *Colorado Cross*

*Disability Coalition v. Abercrombie & Fitch Co.*, the Tenth Circuit clarified that once a named

---

[228] The cases cited all support the (unremarkable) proposition that a named class member must have standing to pursue the claim at issue in a class action.  *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 221 (1974) holds that a litigant must have a "personal stake" in the outcome of a case, it is not permissible for standing to be based on "an interest . . . which is held in common by all members of the public."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975) holds similarly: "the plaintiff still must allege a distinct and palpable injury . . . even if it is an injury shared by a large class of other possible litigants."  *Donelson v. United States Through Department of Interior*, 730 F. App'x 597, 601 (10th Cir. 2018) holds that in class actions, the plaintiff must possess standing "for each claim he seeks to press."  The issue in *Donelson* was that named plaintiffs' individual allegations as to damage to their properties by oil and gas activities was insufficient because they did not identify how specific federal conduct was a final agency action as to the plaintiffs.  *Donelson*, 730 F. App'x at 602.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) takes up the issue of the putative class members' standing at the Rule 23 stage, after determining that the named plaintiff had adequately established standing.  *Rector v. City and County of Denver*, 348 F.3d 935, 942–43 (10th Cir. 2003) held named plaintiffs did not have standing to dispute Denver's parking ticket system because they were unable to personally dispute the central issue in that case.  *Brown-Dickerson v. City of Philadelphia*, No. 15-4940, 2016 WL 1623438 (E.D. Penn. April 25, 2016) dismissed claims on behalf of a plaintiff and a putative class when plaintiff was the representative of a decedent's estate and sought prospective injunctive relief.  *Thomas v. Metropolitan Life Insurance Co.*, 63 F.3d 1153, 1159 (10th Cir. 2011) holds that prior to class certification, named plaintiffs' "failure to maintain a live case or controversy is fatal to the case as a whole."  Because Defendants do not argue Smith lacks standing for any reason other than not having standing to pursue prospective equitable relief, these cases do not support granting the Motion to Dismiss.

[229] Reply at 8.

plaintiff demonstrates her own standing, the issue of whether that plaintiff can adequately represent the interests of the class as a whole, and whether the requested relief is appropriate, is a fact-intensive question that must be taken up at the class certification stage.[230]

Additionally, while Defendants argue that the language in the TAC regarding "plan-wide" problems undergirding the class claims is "conclusory," the case cited to support that proposition cuts against Defendants' argument.  In *Tackett v. M & G Polymers, USA, LLC*, the court dismissed § 502(a)(3) claims brought on behalf of a class when Plaintiffs "[did] not present an allegation of a flawed, systemic plan-wide methodology of calculating benefits."[231]  But here, as discussed above, Smith goes beyond just "reciting the 'plan-wide' language" and has alleged, in detail, systemic plan-wide methodology that underpaid mental health claims, unlike the Plaintiffs in *Tackett*.  At the pleading stage, that is sufficient.  Accordingly, the court will not dismiss the class claims based on this argument.

## CONCLUSION

For the reasons stated above, the court finds that Smith has plausibly stated individual claims for relief under ERISA § 502(a)(1)(B) and § 502(a)(3), and also that claims for relief have plausibly been stated on behalf of the putative class.  Accordingly, Defendants' Motion to Dismiss[232] Claims One, Two, Three, Five, Six, and Seven is DENIED.

SO ORDERED this 20th day of January, 2022.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[230] 765 F.3d 1205, 1213 (10th Cir. 2014).

[231] 561 F.3d 478, 492 (6th Cir. 2009).

[232] Dkt. 157.